## LASATER v. STATE.

### Opinion delivered January 20, 1906.

1.  SEDUCTION—OFFER TO MARRY AS DEFENSE.—It is not a defense to a prosecution for seduction that defendant, after the prosecution had been commenced, offered to marry the prosecuting witness, but her father refused to accept the offer except upon conditions not acceptable to defendant, who thereafter withdrew his offer.  (Page 470.)

2.  SAME—OFFER TO MARRY AS EVIDENCE OF GOOD FAITH.—Where defendant obtained carnal knowledge of the prosecuting witness by virtue of an express promise of marriage, but no day was set for the marriage, the fact that after the prosecution was begun he offered to marry her and subsequently withdrew the offer does not tend to prove that his original promise was made in good faith.  (Page 470.)

3.  SAME—NECESSITY OF CORROBORATION.—Under Kirby's Digest, § 2043, providing that no person shall be convicted of the crime of seduction upon the testimony of the female "unless the same be corroborated by other evidence," on a charge of obtaining carnal knowledge of a female by virtue of a false promise of marriage, corroboration is required as to the promise of marriage and the fact of sexual intercourse, but not as to the falsity of the promise.  (Page 472.)

4.  SAME—SUFFICIENCY OF CORROBORATION.—Testimony of the prosecuting witness in a seduction case as to the promise to marry may be corroborated by circumstances as well as by direct evidence.  (Page 472.)

5.  LOST DOCUMENT—SUFFICIENCY OF PROOF.—Where loss of a letter has been proved, it is admissible to prove its formal address or com-

mencement, if material, without proof of contents of the letter, where there was no controversy about the contents of the letter nor any objection made to the failure to prove same. (Page 474.)

6. SEDUCTION—WHETHER NECESSARY TO PROVE REQUEST TO MARRY.—On a charge of obtaining carnal knowledge of a female by virtue of a false promise of marriage, it was not error to refuse to instruct the jury that, before they could convict, they must find, not only that there was an express promise of marriage, but that the prosecuting witness requested defendant to keep his promise and that he willfully refused, as it was defendant's duty to keep his promise without any request on her part. (Page 476.)

7. SAME—BURDEN AND SUFFICIENCY OF PROOF.—While, in a prosecution for obtaining carnal knowledge of a female by virtue of a false promise of marriage, the jury must find beyond a reasonable doubt that the defendant is guilty, and there must be corroboration of the testimony of the prosecuting witness as to the promise of marriage and the fact of sexual intercourse, there is no requirement that the corroboration be proved beyond a reasonable doubt. (Page 476.)

Appeal from Clay Circuit Court; FREDERICK D. FULKERSON, Judge; affirmed.

*D. Hopson, J. L. Taylor* and *F. G. Taylor,* for appellant.

No time or place was ever fixed for marriage, therefore no breach. 5 Cyc. 1005. The court's instructions as to corroboration of prosecutrix was erroneous. The essence of the crime is that the promise of marriage is false or feigned, and corroboration in that respect is necessary. 25 Am. & Eng. Enc. Law, 244-5; 40 Ark. 482. The prosecutrix should be corroborated by evidence, independent of her own testimony, tending to identify the defendant as the party who committed the crime. 59 Ark. 379; 25 Am. & Eng. Enc. Law, 244. A *bona fide* offer of marriage on the part of defendant, refused by the prosecutrix, is a defense in this action. 69 Ark. 322. The evidence excluded by the court and that offered by the defendant was competent, and should have been admitted.

*Robert L. Rogers, Attorney General,* for appellee.

RIDDICK, J. This is an appeal from a judgment convicting the defendant, Clyde Lasater, of the crime of seduction, and sentencing him to imprisonment for one year in the State penitentiary as punishment therefor. It is not disputed that the defendant obtained carnal knowledge of the prosecuting witness, Lucy Robinson, who was a girl under eighteen years of age, and

that she became pregnant and gave birth to a child as the result of such intercourse. But it is contended that it was not shown that the defendant obtained such carnal knowledge of the plaintiff by virtue of an express promise of marriage, and further that, if the defendant was guilty, he ought not to be convicted, for the reason that he afterwards made an offer of marriage which was not accepted.

Now, as to the proposition of marriage: It was not shown that the prosecuting witness had ever declined to marry the defendant. On the contrary, the evidence showed that she has at all times been ready and willing to marry him. She so testified at the trial, but the defendant, when questioned on this point, confessed that he was not willing to marry her at that time, and that he was not willing to do so at the time the grand jury acted on the charge and returned the indictment against him.

There was testimony offered by defendant that tended to show that, after the prosecuting witness had given birth to a child and after a prosecution had been begun against the defendant for seduction, he did make, through his uncle, some overtures to the father of the prosecuting witness to settle the matter by marriage, and that the father of the prosecuting witness refused to accept this offer unless defendant would pay five hundred dollars in money, and costs of lying in expenses and the costs of the prosecution which had been commenced against the defendant. Defendant also offered to prove that the prosecuting witness had stated to the grand jury at the time she appeared before it as a witness that she and defendant would have been married but for objection on the part of the father. But the court excluded this testimony, and it is very clear that under our statute it was immaterial. For our statute provides that, after a prosecution for seduction has commenced, even the marriage of the defendant to the prosecuting witness does not terminate, but only suspends, such prosecution; and if after such marriage the defendant without just cause abandons the prosecuting witness, the statute requires that the prosecution "shall be continued and proceed as though no marriage had taken place between such female and the accused." Kirby's Digest, § 2044. If an actual marriage does not terminate a prosecution already commenced, certainly a mere offer of marriage will not have that effect, when made after the commencement of the prosecution, unless the defendant keeps

up his offer, and is ready and willing to perform it at the time of trial. But the prosecution was commenced in this case before a justice of the peace. Defendant made the offer to marry after the prosecution was begun, and he admits that, before the indictment was returned against him, he had changed his mind, and was unwilling to carry out his offer and marry the prosecuting witness. He did not make the offer of marriage to the prosecuting witness, who has at all times been willing to marry him, but to her father for her, and the fact that her father may have imposed unreasonable conditions did not justify him in withdrawing the offer altogether. The withdrawal of the offer left him in the same position, so far as the prosecution was concerned, as if he had never made it, and this evidence was properly rejected by the trial court.

We do not say that an offer of marriage by a defendant prosecuted for seduction would be a defense, even if the defendant was ready and willing to make good his offer at all times thereafter. When a defendant seduces a female by virtue of a promise of marriage, and then declines to carry out his promise, his offer of marriage after prosecution is begun may be of no avail unless accepted by the prosecuting witness. But the facts in this case were peculiar. The prosecuting witness testified that there was an express promise of marriage, but that no day was set for the marriage. Neither she nor the defendant knew that she was pregnant until a short time before the birth of the child. Defendant did not know of her condition until the day the child was born, as he had been absent from the State. He had never been requested to marry her, and had never declined to do so. A short time after the birth of the child she wrote him a letter, telling him she loved him still and asking him what he intended to do. If he had then offered to marry her, and kept his offer open for her acceptance up to the time of the trial, it would have tended under the circumstances here very strongly to show that his original promise was made in good faith. But, without any excuse or fault on her part, he withdrew the offer, and must therefore stand only on his other defense, that he had never made any promise of marriage, and did not obtain carnal knowledge of the prosecuting witness in that way.

The prosecuting witness testified that she was induced to

yield her virtue by reason of a promise of marriage made to her by defendant, and the next question is whether there was any corroborating evidence on that point. The woman seduced, being *particeps criminis,* our statute provides that the defendant shall not be convicted upon her testimony unless corroborated by other evidence. Kirby's Digest, § 2043. But this corroboration is required only as to the promise of marriage and the fact of sexual intercourse. *Polk* v. *State,* 40 Ark. 482; *Armstrong* v. *People,* 70 N. Y. 38.

Counsel for defendant contend that the corroboration should extend to the allegation that the promise was false, but, in the nature of things, the testimony of the prosecuting witness is always corroborated on that point by the fact that they did not marry, and that is one reason why no corroboration is required as to that.

The defendant admitted the intercourse in this case, and that leaves us, as before stated, to consider whether there was corroboration as to the promise to marry. Now, this fact may be corroborated by circumstances as well as by direct evidence.

Mr. Justice FOLGER of the Court of Appeals of New York, in considering a question of this kind, said: "It is settled that the supporting evidence is required as to two matters named in the act, and as to them only. They are the promise of marriage and the carnal connection. *Kenyon* v. *People,* 26 N. Y. 203; *Boyce* v. *People,* 55 N. Y. 644. It is settled by the same authorities that the supporting evidence need be such only as the character of these matters admits of being furnished. The promise of marriage is not an agreement usually made in the presence or with the knowledge of third persons. Hence the supporting evidence possible in most cases is the subsequent admission or declaration of the party making it; or the circumstances which usually accompany the existence of an engagement of marriage, such as exclusive attention to the female on the part of the male, the seeking and keeping her society in preference to that of others of her own sex, and all those facts of behavior toward her which, before parties to an action were admitted as witnesses in it, were given to the jury as proper matter for their consideration on that issue." *Armstrong* v. *People,* 70 N. Y. 43. See also *People* v. *Orr,* 92 Hun, 199; 25 Am. & Eng. Enc. Law (2 Ed.), 239.

Now, the prosecuting witness testified that she was seduced by defendant under promise of marriage in August, 1904, and the testimony shows that, beginning about January, 1904, up to the spring of 1905, he had paid her marked attention, visiting her often when she was at home and corresponding with her when she was away on visits to other places. The defendant himself said that during that time he "kept her company pretty regular," while the prosecuting witness said he generally came to see her once during the middle of the week and twice on Sunday. She testified that they agreed that neither of them should keep other company, and that she rarely accepted the company of other young men. He denied that they had made such an agreement, but admits that on one occasion they had a serious quarrel because she permitted a showman to accompany her home. This was some months after the first act of intercourse occurred, and she said she permitted this attention because she understood that defendant was going with other girls. The letters of defendant read in evidence tend to support her testimony that there was some promise or understanding between them of that kind. In one of them he tells her that there will be a party in town that night, and that he may go. But he says in the letter: "Hun, if I do go, don't worry about me being with some other girl, for I won't." Now, why should he take the trouble to tell her not to worry about his going with some other girl, unless there was some agreement not to do so, or unless they were already engaged to be married? There were only five letters of defendant read in evidence, the prosecuting witness testifying that the others had been destroyed soon after they were received. In two of these five letters she is addressed as "Dear Lucy," in two as "Dearest Lucy" and in the remaining one as "Dear Baby." In one of these letters he speaks of her cousins as his cousins, and says, "Well, baby, tell all my cousins 'Hello' for me, and bring one of them home with you." In another he tells her that everything is awful lonesome without her. In the same letter he says: "Well, dearest, I am getting awful lonesome without you. Dear, think of your man often, and have a good time." In another letter, apologizing for a previous letter, he tells her that he loves her better than his life, but that she ought to know that he was "awful jealous." In still another he writes: "Kid, I am getting anxious to see you, my

*woman.* Well, honey, I will close, and so the next letter I can tell you in place of writing to you, so good bye, my———. I remain as ever, Yours forever, Clyde."

In the letter above referred to it will be noticed that he uses the expression "I am getting anxious to see you, my woman." Now, this was after the seduction, and at a time he was allowed to have sexual intercourse with her. So it does not seem that this expression meant that he was anxious to have her as his mistress, but that he meant that he was anxious for her to be his woman lawfully, that is to say, that he was getting anxious for the marriage to take place. Taking into consideration the fact that the defendant had been regularly visiting this young woman for a long time, and the tender and intimate expressions with which these letters abound, we think that it was corroboration enough to go before the jury.

In addition to the letters referred to above, the prosecuting witness testified that she received one while she and her sister were temporarily staying at Batesville, Ark. This letter was, she said, written at Knobel on the 3d day of July, 1904, where defendant had gone to put up a lemonade stand to be used on the 4th of July. She said that she had repeatedly looked for the letter, and had failed to find it, and that it was either lost or destroyed. This letter, she said, began by addressing her as "My dear future wife." On being cross-examined as to the contents of the letter, she said she did not remember them, except it stated that he had "got the stand fixed up, and was going to take time to write," and that the mosquitoes were very bad. She testified that she showed this letter to her siser, Oretha. Oretha testified that she was in Batesville with her sister on the 4th day of July, 1904; that while there her sister received a letter from defendant; that she read the letter and remembered that defendant addressed her sister in the commencement of the letter as "My future wife." That she did not pay much attention to the letter, and, besides the address, remembered only that it was "so loving and silly" that she advised her sister to destroy it. Defendant objected to this testimony on the ground, as he said, "that it is incompetent because the letter itself is the best evidence, and the proper foundation is not laid for the introduction of parol testimony in regard to the letter." But, as the loss of the letter was proved, the only doubt about the evidence is whether the mere address

commencing a letter can be proved by witnesses who do not remember the substance of what the body of the letter contained. There is some doubt in our minds as to the admissibility of this evidence, but we are not certain that this point was raised by the objection of defendant. That objection was specifically directed to the fact that no foundation was laid for the admission of parol evidence as to the contents of the letter. The trial judge responded to this objection by saying: "She says the letter is destroyed, and that she is unable to find it." The witness was then questioned again as to the loss of the letter, and stated again that it was lost or destroyed and could not be found. Defendant repeated his objection in the same form, which was overruled. But; conceding that the point is raised, the defendant admitted having written a letter on the day named to the witness at Batesville, Arkansas. He remembered having written the letter, but denied that at the commencement of the letter he addressed her as "My dear future wife," and says that he thinks he addressed her as "Dear Lucy." Defendant did not offer to testify as to the contents of the letter, nor were either of the other witnesses questioned very closely as to whether the contents of this letter could be recalled by them, though they were questioned in reference thereto, and one of them, the prosecuting witness, said the letter stated something about the lemonade stand, at which defendant was at work on that day, having been finished, and that the mosquitoes were bad. While her sister said that she remembered nothing about the contents of the letter beyond the address, except that it was "loving and silly." But the State did not claim that there was anything material in the body of this letter. The defendant, as he admitted writing the letter, must have known something about the contents thereof; but, as before stated, he did not offer to tell what the contents were, but merely denied that he commenced the letter by addressing the prosecuting witness as "My dear future wife," and stating that the address was "Dear Lucy." It does not seem, therefore, that there was any real controversy about the contents of the body of the letter, or that any objection was made to this evidence on the ground that the witnesses did not state what the body of the letter contained. Neither side insisted that the contents of the letter should be proved or all evidence of it rejected. The difference between

the parties related entirely to the formal address or commnce-ment of the letter, and we do not think any reversible error was committed in admitting the evidence.

We find no error in the giving or refusing of instructions. The first, second, fifth and sixth instructions asked by defendant are covered by those given by the court. The third is erroneous in that it tells the jury that, before the jury could convict, they must find, not only that there was an express promise of marriage, but that the prosecuting witness requested defendant to keep his promise, and that he willfully refused. If defendant seduced the girl under promise of marriage, it was his duty to have kept the promise without any request on her part.

The fourth is not correct, for it requires corroboration on four different points, when the law only requires it as to two.

The seventh was properly rejected, for there was no evidence that the prosecuting witness had ever refused to marry the defend-ant, and, as before stated, his offer to marry, which was subse-quently withdrawn, was no bar to the prosecution.

The eighth instruction requested was objectionable, for it stated that the jury must not only find beyond a reasonable doubt that the defendant was guilty, but must find beyond a reasonable doubt that the prosecuting witness was corroborated. The doc-trine of reasonable doubt does not apply to the different items that make up the proof of guilt. The jury must believe beyond a reasonable doubt from the evidence that the defendant is guilty, and there must be corroboration of the testimony of the prosecuting witness, but there is no requirement that the corrob-oration be proved beyond a reasonable doubt. *Lackey* v. *State,* 67 Ark. 416; *Mitchell* v. *State,* 73 Ark. 291.

The facts in this case are somewhat unusual, and there is considerable conflict in the evidence, and some doubt perhaps as to defendant's guilt. But those questions were properly pre-sented to the jury, and they found against defendant, and their finding is conclusive.

Finding no error, the judgment is affirmed.