WOODARD *v.* STATE.

Opinion delivered April 12, 1920.

1. SEDUCTION—CORROBORATION OF PROMISE OF MARRIAGE.—Evidence that accused was received as the accepted suitor of the prosecutrix, and visited her regularly, and that no other man was going with her *held* sufficient to corroborate her testimony that there was a promise of marriage by him and that he was the father of her child.

2. SEDUCTION—FORMER REPUTATION AS DEFENSE.—The former bad reputation for chastity of prosecutrix is no defense to a prosecution for seduction if she was chaste at the time of the alleged intercourse.

3. SEDUCTION—INSTRUCTION AS TO REFORMATION OF PROSECUTRIX.— In a prosecution for seduction, where defendant had introduced evidence that two years before the offense prosecutrix had had a bad reputation for chastity, which was denied by the State, an instruction that reformation removed the defense of want of chastity was not improper since the jury may have believed the testimony as to her previous bad reputation and yet that she had reformed.

4. WITNESSES AS TO CHARACTER—CROSS-EXAMINATION AS TO SPECIFIC ACTS.—Witnesses who testified as to defendant's previous good reputation for morality and virtue could be cross-examined as to whether they had heard reports concerning defendant's conduct which, if true, would have shown that he did not deserve a good reputation.

Appeal from Johnson Circuit Court; *A. B. Priddy,* Judge; affirmed.

*W. E. Atkinson* and *G. O. Patterson,* for appellant.

1. It was error to refuse the peremptory instruction asked by defendant. There was no testimony except the prosecutrix's and she was not corroborated either as to the intercourse or promise of marriage. 130 Ark. 149; 11 Enc. of Ev. 699; 67 Ind. 567-573; 40 Ark. 485; 77 *Id.* 472; 72 *Id.* 23; 84 *Id.* 67; 86 *Id.* 30; 92 *Id.* 424; 77 *Id.* 16; 126 *Id.* 98; *Smedley* v. *State,* 130 Ark. 149; 102 Pa. St. 208; 104 Mo. 644; 35 Cyc. 1361, note 76; 64 Ind. 573; 90 Ala. 641; 93 Va. 815.

2. There was absolutely no corroboration of sexual intercourse and improper evidence of character was admitted. 91 Ark. 559; 120 *Id.* 458.

3. The 8th instruction was misleading and the 11th and 14th prejudicial and erroneous. 91 Ark. 555-560; 16 Cyc. 1280-1; 88 Ala. 116.

4. It was error to refuse the second request of defendant. 111 Iowa 69; 132 *Id.* 196; 78 *Id.* 123; 110 N. Y. 188.

5. It was error to refuse defendant's third and fifth requests, also the seventh. Cases *supra.*

6. Improper testimony was admitted on the part of the State, and illegal evidence as to character. *Supra.*

1. This is the second appeal in this case. The first was reversed, The testimony is substantially the same, but the corroboration is sufficient. The law is settled. 215 S. W. 708; 119 Ark. 436; 40 Ark. 482. The corroboration is sufficient. 77 Ark. 472; 92 *Id.* 421; 86 *Id.* 30; 4 Minn. 325.

2. There was no error in the court's action in admitting testimony as to character of appellant. 3 Enc. of Ev., p. 49.

3. There was no error in the instructions. 129 Ark. 180; 110 *Id.* 402. On the whole case the verdict is right.

SMITH, J. This appeal comes from a second judgment of conviction sentencing appellant to the penitentiary for the crime of having obtained carnal knowledge of one Bessie Miller by virtue of a false express promise of marriage.

The former judgment was reversed because of the refusal of the court to give a requested instruction declaring the law applicable to a promise of marriage conditioned upon pregnancy following intercourse obtained by reason of that promise. We held that consent based upon such a condition did not constitute seduction; but we also held that if the promise of marriage was unconditional, the fact that the time or manner of fulfilling that promise would be influenced, or controlled, by the fact of pregnancy did not destroy its character as an unconditional promise of marriage. *Woodard* v. *State,*

140 Ark. 258. The instruction on this subject set out in the former opinion was given at the trial from which this appeal comes; but the converse of it was also given, as in the former opinion we said it was proper to do. An exception was saved to this instruction; but it appears to conform substantially to the law as declared in the former opinion.

The difficult question on the present appeal is that of the sufficiency of the corroboration of the prosecutrix; it being earnestly insisted that there is a failure of corroboration both as to the promise of marriage and the act of intercourse, both of which facts are denied by appellant.

The testimony upon this subject may be summarized as follows: Bessie Miller was a girl eighteen years old, who earned her own support by living with and as a member of the family of Dr. and Mrs. Oliver Basham. Appellant began to visit Miss Miller in January, 1918, and she says they became engaged on February 17th thereafter, and it was agreed that they should marry when appellant became nineteen years of age, he being at the time only sixteen years old, and that on the evening on the day on which she became engaged she told Mrs. Basham of her engagement. The testimony shows that thereafter appellant was received in the Basham home as an accepted suitor of Miss Miller, and the jury might have found that he knew that he was being so received by the Basham family. During a period of three months he called on Miss Miller every Sunday except two, visits on those days being prevented by inclement weather, and he and Miss Miller would spend the entire afternoon together in a room assigned to them in the Basham home, except when they left the home for a stroll over the neighboring roads or woods. It was during one of these strolls that Miss Miller says that she yielded to appellant's solicitations. He admits that he was present with Miss Miller at the time and place when and where she says the act of intercourse occurred; but he denies that it occurred. Miss

Miller also testified that she yielded to appellant on two other occasions, those acts of intercourse being committed in the Basham home. A fully developed baby was born on December 25, and during the period of time when, in the course of nature, it would have been begotten Miss Miller went with no other young men. Dr. and Mrs. Basham testified that for a period of about three months appellant was constant in his attentions to Miss Miller, and that she received visits from no other young men during that time. Mrs. Basham testified that after Miss Miller told her about the engagement Miss Miller commenced to make quilts, and continued quilting during the time appellant visited her. It does not appear what visits appellant made except those on Sunday afternoons, evidently pursuant to a standing engagement; but the jury might have found from the testimony, not only that Miss Miller was making quilts, but that she continued to do so for such length of time as that appellant must have known that she was doing so. The Basham home was a country residence, consisting of three rooms and a large hall. It does not appear whether any quilt was in the frame when appellant was there or not. But, even in the absence of an affirmative showing on that subject, we cannot say that the jury was not warranted in drawing the inference from the testimony that appellant knew that Miss Miller was employing her spare time in this manner; nor can we say that if the jury so found that this finding was not some corroboration of the promise of marriage.

In the case of *Lasater* v. *State,* 77 Ark. 468, it was insisted, as it is here insisted, that there was no sufficient corroboration of the prosecutrix, and in that case, as in this, such evidence as tended to corroborate her was circumstantial in its nature, except that in the Lasater case certain letters of the defendant were produced which expressed tender affection for the prosecutrix. In that case the court said: "Mr. Justice Folger of the Court of Appeals of New York, in considering a question of this kind, said: 'It is settled that the supporting evidence

is required as to two matters named in the act, and as to them only. They are the promise of marriage and the carnal connection. *Kenyon* v. *People,* 26 N. Y. 203; *Boyce* v. *People,* 55 N. Y. 644. It is settled by the same authorities 'that the supporting evidence need be such only as the character of these matters admits of being furnished. The promise of marriage is not an agreement usually made in the presence or with the knowledge of third persons. Hence the supporting evidence possible in most cases is the subsequent admission or declaration of the party making it; or the circumstances which usually accompany the existence of an engagement of marriage, such as exclusive attention to the female on the part of the male, the seeking and keeping her society in preference to that of others of her own sex, and all those facts of behavior toward her which, before parties to an action were admitted as witnesses in it, were given to the jury as proper matter for their consideration on that issue.' *Armstrong* v. *People,* 70 N. Y. 43. See also *People* v. *Orr,* 92 Hun 199; 25 Am. & Eng. Enc. Law (2 ed.), 239.''

We think the facts here recited fully warranted the jury in finding that appellant had sexual intercourse with Miss Miller; and we have also concluded that the jury was warranted in finding that there was substantial corroboration of Miss Miller's testimony that this intercourse was had by virtue of a promise of marriage. The appellant made no contention that he was visiting the girl for the mere purpose of sexual gratification. Indeed, he denied that he had ever had intercourse with her. But, as we have said, he continued his visits regularly to the Basham home, and the jury might have found that he must have known that he was being received there by Dr. and Mrs. Basham as an accepted suitor, and after some one had had intercourse with Miss Miller, as is evidenced by the subsequent birth of a child, and the testimony shows that during this period no other young man visited Miss Miller. A number of circumstances are discussed in the brief for appellant which are said to discredit Miss

Miller's testimony; but these are questions which have been passed upon and settled by the verdict of the jury.

Testimony was offered for the purpose of questioning Miss Miller's chastity, although no witness claimed to have had sexual intercourse with her. A witness for appellant did testify, however, that about two years before the time of the alleged seduction he fondled and caressed Miss Miller and took liberties with her person which no chaste woman would have permitted; and there was some other testimony somewhat unfavorable to Miss Miller's reputation for chastity.

Upon that issue the court gave the following instruction: "Although you may find from the testimony in the case that the general reputation of Bessie Miller for chastity, some time prior to the alleged acts of intercourse with the defendant, may have been bad, still, if you find from all the facts and circumstances that she was a chaste and virtuous woman at the time of the alleged acts of intercourse with the defendant, then her previous chastity, if the jury find that she was previously unchaste, will not avail the defendant as a defense in this case."

This was a proper instruction. In 24 R. C. L., p. 768, the following statement of the law appears: "It is generally agreed that an unchaste woman may reform and gain character for chastity, which will suffice to convict the defendant if he deprives her of it." Many cases are cited in the note which support the text quoted.

In our own case of *Polk* v. *State*, 40 Ark. 482, it was said: "If previous lapses from virtue are proved, reformation may be shown; for it may have been an indiscretion of which she instantly repented and which she never repeated."

It is insisted that there was no evidence of any change in the reputation of Miss Miller and that the instruction should not, therefore, have been given. But it appears that the truth of all testimony impeaching Miss Miller's reputation for chastity was denied by the prosecution, and that, therefore, no truthful testimony could have been offered that there had been a change. The

jury might have believed some portion of this testimony, while other portions were rejected, and it was not improper, therefore, nor abstract, for the court to give the instruction set out above.

Testimony was offered tending to prove appellant's reputation for morality and virtue, and the witnesses offered for that purpose were asked on cross-examination whether they had heard certain reports concerning appellant's conduct, which, if true, would have shown that he did not deserve, if he did, in fact, possess, a good reputation. In regard to this testimony the court instructed the jury as follows:

"Some evidence has been introduced tending to show a rumor of other acts of immorality by defendant. This evidence will not be considered by you as evidence of guilt in this case, but only as it may affect the character of the defendant for morality and virtue."

The court should of course have used the word "reputation," instead of the word "character," but no specific objection was made to it on that account. The rule applicable to the cross-examination of witnesses, who testify as to reputation, is stated in 3 Enc. of Evidence, p. 49, as follows: "It is generally held that such a witness may be asked on cross-examination as to an existence of particular acts, vices, or associations of the other persons inconsistent with the reputation attributed to him by the witness, not for the purpose of establishing the truth of such acts, but to test the witness' credibility, and to enable the jury to ascertain the weight to be given to his testimony." We think the court's instruction was an attempt to apply the rule stated; and while it does not accurately express that rule, the defect in it is one calling for a specific objection.

The court admonished the jury that the acts of immorality, about which the witnesses were asked, could not be considered on the question of his guilt of the offense charged; but would be considered only in weighing the testimony of the witnesses who had sworn that appellant bore a good reputation for morality and virtue,

and, as thus interpreted, the instruction was a correct declaration of the law.

Objections were made to certain other testimony, and to certain instructions given and refused; but what we have said disposes of these objections adversely to appellant's contention, and as no error prejudicial to him is made to appear the judgment is affirmed.

### OPINION ON REHEARING.

Upon the petition for rehearing, it is now very earnestly insisted that the testimony in regard to Miss Miller making quilts was incompetent and prejudicial. And, afer a careful reconsideration of the testimony, the majority have concluded that the contention is well taken. All the members of the court have, at all times, regarded the sufficiency of the corroboration as an exceedingly close question. The sufficiency of this testimony was not discussed upon the first appeal, as we reversed the judgment of conviction for other reasons.

Upon the second trial( the trial from which this appeal comes), the testimony is substantially identical with that offered at the first trial, and upon the consideration of this record we first concluded that the testimony was legally sufficient to support the verdict and we affirmed the judgment of conviction. The original opinion recognized this as the close and difficult question in the case, and, in concluding that the testimony was legally sufficient to support the verdict, we gave to it its highest probative value and took into account the inferences which we thought were fairly deducible from it. There were two inferences which we first thought were fairly deducible from the testimony, and which, if they were warranted, would furnish substantial corroboration of Miss Miller's testimony. The first of these was that appellant continued his visits to the Basham home after he knew he was being received there as an accepted suitor; and the other was that he continued his visits there after he knew that Miss Miller had begun to make quilts.

In reaching the conclusion that these inferences were fairly deducible from the testimony, we recognized the law to be that the required corroboration of Miss Miller's testimony could not be furnished by proving what she had said or done. 24 R. C. L. 780; *Hay* v. *State,* 1915 C, Ann. Cas. 135. We did not hold that any statement made by Miss Miller to the Bashams in the absence of appellant was competent; nor did we hold that the fact alone that Miss Miller was making quilts was competent, for such is not the law. We were of opinion, however, that the testimony warranted the jury in drawing the inference that appellant knew he was being received in the Basham home as an accepted suitor, and that he continued his visits there after knowing that Miss Miller had begun to make quilts.

The majority have now concluded that the testimony did not warrant these inferences, and that the testimony in regard to making quilts was incompetent and should not have been admitted. It is true Dr. and Mrs. Basham received appellant in their home as an accepted suitor, but neither of them testified that this opinion was based upon anything appellant had said or anything in his conduct except that for the period of time stated Miss Miller received his attentions to the exclusion of other young men. Neither Dr. nor Mrs. Basham testified to any incident of fond nonsense occurring in the relationship of these young people which might have been expected in the courtship of an enamored and engaged couple still in their teens. Miss Miller did begin making quilts, and continued to do so during the time appellant was visiting her. But it is pointed out that these quilts were not put in frames nor otherwise so displayed as that appellant must necessarily have seen them. On the contrary, his visits were made on Sundays, and the testimony does not show that Miss Miller did any quilting during these visits, so that, whatever her preparations for the approaching wedding may have been, there is not, in the opinion of the majority, any testimony legally sufficient to impute that knowledge to appellant.

The judgment of the court below will, therefore, be reversed because of the admission of testimony in regard to the quilting.