McMaster *v.* State.

Opinion delivered March 17, 1924.

1. Seduction—corroboration of prosecutrix.—Testimony of the prosecutrix in a seduction case must be corroborated both as to the promise of marriage and the act of sexual intercourse.

2. Seduction—corroboration of prosecutrix.—The fact that a child was born to prosecutrix and testimony of her parents as to intimate association between her and defendant and numerous opportunities for sexual intercourse, was substantial corroboration of her testimony as to defendant having had intercourse with her.

3. Seduction—corroboration of prosecutrix.—Corroboration of the testimony of prosecutrix may be by circumstances as well as by direct proof, and ordinarily such corroboration can be established only by circumstantial evidence.

4. Witnesses—scope of cross-examination.—Where defendant sought to establish by his witness by inference that prosecutrix had been guilty of unbecoming conduct while returning from a party at an unreasonable hour with a man, it was within the State's province on cross-examination to elicit from the witness all the facts and circumstances within his knowledge concerning the occasion and his connection therewith.

5. Seduction—instruction as to chastity.—In a prosecution for seduction it was proper to charge that seduction means obtaining

carnal knowledge of a woman of actual personal chastity by false
express promise of marriage; that a woman is presumed to be
chaste, and, if defendant maintains that the prosecutrix is
unchaste, he must show it by evidence; that a woman may lapse
from chastity and reform, and that, if defendant obtained carnal
knowledge of the person of the prosecutrix by a false express
promise of marriage when she was personally chaste, the defend-
ant should be convicted; but if, at the time, she was unchaste,
the defendant should be acquitted.

6.  CRIMINAL LAW — NEWLY DISCOVERED EVIDENCE — DILIGENCE.—
Refusal of a new trial for newly-discovered evidence was proper
where there was no sufficient showing of diligence, and such
testimony tended merely to impeach the credibility of the prose-
cutrix.

7.  CRIMINAL LAW—EVIDENCE—GENERAL OBJECTION.—Where a general
objection to a witness' testimony on a certain subject was sus-
tained, it will be presumed that all of such testimony was
excluded; if counsel conceived that such was not the effect of
the trial court's ruling, a more specific exception should have
been saved.

Appeal from Crawford Circuit Court; *James Coch-
ran,* Judge; affirmed.

*C. M. Wofford,* for appellant.

Corroboration of the prosecutrix as to the promise
of marriage alone is not sufficient. She must also be
corroborated as to the fact of the sexual intercourse. 40
Ark. 482; 77 Ark. 468; 97 Ark. 421. The testimony of
Geo. Boyd to the effect that the prosecutrix was making
quilts and pillow shams and that she was going to get
married was clearly inadmissible. *Bethel* v. *State,* 162
Ark. 76; 143 Ark. 404.

*J. S. Utley,* Attorney General, and *John L. Carter,*
Assistant, for appellee.

1. There was sufficient corroboration both of the
promise of marriage and of the illicit intercourse to
make a question for the jury. 24 R. C. L. 779, par. 63;
126 Ark. 98; 92 Ark. 421; 77 Ark. 472.

2. There was no abuse of discretion in overruling
the motion for new trial based on the ground of newly-
discovered evidence. There was no diligence shown, and
in any event the newly-discovered evidence would have

gone only to impeach the credibility of a witness. 132 Ark. 92; 145 Ark. 244.

3. The record does not reflect that the court ruled on the objection here urged to the testimony of Geo. Boyd. Moreover, appellant waived such objection by inquiring about the same things on cross-examination.

Wood, J. This is an appeal from a judgment sentencing the appellant to imprisonment in the State Penitentiary for a period of one year and adjudging a fine against him in the sum of $100, upon conviction, after a trial by jury, for the offense of seduction. The prosecutrix, Ocie Boyd, testified substantially to the effect that she had kept company with the appellant some three or four years. He began going with her in 1920. They were engaged to be married in the summer of 1920, and the appellant had sexual intercourse with her in the spring of 1921. Before this occurred, they were engaged to be married, and the witness would not have permitted appellant to have such intercourse if he had not promised to marry her. They continued this relation until the fall of 1922. The witness was the mother of the child which she had with her while giving her testimony. Appellant was father of the child. The first act of intercourse occurred in the spring of 1921. The child was born in June, 1923. The appellant induced the witness to have sexual intercourse with him by telling her that he did not think there was any harm in it, as they were going to be married. During the period appellant was going with her she was also keeping company with several other young men.

The mother and father of the prosecutrix testified to the effect that the appellant kept company with their daughter some three or four years. He would come to their house and take her to church, parties, and other places. The father stated that he guessed the appellant went with his daughter as many as five hundred times. He would come regularly a while, and then quit. During the examination of the father he was asked this question: "Q. From the summer of 1921 up till the time he quit

going with her, did she make any preparation toward getting married? A. She made pillow shams and quilts. She would say 'I am going to get married.'" The appellant objected to the testimony, and the court said to the witness, "You need not state what she said." Appellant saved his exceptions to the ruling. He was further asked, "Do you know whether or not the defendant saw these things or knew she was making them?" and answered, "I don't know."

On cross-examination the appellant asked witness this question: "Talking about the pillow shams and quilts, they are not the only ones made in your family? A. She made these and put them away—looked like she was making them for her use, or she would not have put them away. She told me they were going to get married." Counsel for appellant said, "We object to that." Thereupon the court stated as follows: "The statement of what his daughter told him is not admissible, and, gentlemen of the jury, you will not consider that in rendering your verdict." The witness further stated that, during the time that the appellant was going with his daughter, she kept company with him exclusively. The witness was asked if he ever had a talk with the appellant about the matter, and answered, "All we ever said about marrying—I gave my girl a heifer calf, and I said, 'When you and her marry, you will have a start,' and he said, 'Yes, I have two besides that.'"

Laura Justice testified that she lived in the same neighborhood with the prosecutrix and appellant. She had a conversation with the appellant one day, and he said, "We will be close neighbors soon," and said he was going to get married. Witness asked him if he was going to marry Ocie Boyd, and he said, "Don't you think she would make a good woman?" and witness replied, "I do," and he said, "You know whom I have been going with."

Zula Ballinger testified that the appellant told her once that he and Ocie Boyd were going to get married and live down there.

The appellant testified in his own, behalf, and his testimony tended to rebut the testimony of the prosecutrix and the other witnesses for the State to the effect that he kept company constantly with the prosecutrix, and the appellant testified that he had never had sexual intercourse with the prosecutrix.

Hubert Fears testified that the prosecutrix and George Ballinger, Laura Fowler and witness went to a play party, in the community where the prosecutrix lived, in the year 1919. Witness was with Miss Fowler, and Ballinger was with Ocie Boyd. The play party was in a house near McMaster's store. The party broke up at 10:30 or 11 o'clock. The place of the party was about a mile from the home of Ocie Boyd. When the party broke up, they started toward her home and got there at four or five o'clock in the morning. Witness and the young lady he was with were not with the other couple all the time. They were supposed to be ahead. They did not overtake them until the next morning, when they got to the gate. Witness did not know what occurred on the way. On cross-examination witness, over the objection of the appellant, was asked what he and his companion were doing on their way home, and whether or not there was anything improper in his conduct that night. The witness answered, "No sir; I don't know if there was anything improper between the other couple."

In rebuttal the State introduced testimony tending to rebut the above testimony of the witness Fears.

Among other instructions the court gave the following: "4. This is a prosecution for seduction, and it contemplates the obtaining of carnal knowledge of a woman of actual personal chastity, by virtue of a false express promise of marriage. The law presumes the woman to be chaste; and, if the defendant maintains that she is unchaste, he must show it by evidence. If a woman lapses from personal chastity, yet if she reforms and maintains her personal chastity for such a time that the jury can see that she is actually personally chaste at the time of the alleged seduction, then if the accused obtains

carnal knowledge of her person by a false express promise of marriage, and this is sufficiently proved, the defendant should be convicted. If, however, it appears that the woman, at the time of the alleged seduction, was not possessed of actual personal chastity, the accused should be acquitted.'' The appellant duly objected and excepted to the giving of this instruction.

The appellant set up, as one of the grounds of his motion for a new trial, the newly discovered evidence of one Harvey Myers. Appellant alleged that Myers, if present, would testify that he had had sexual intercourse with Ocie Boyd on several occasions between April or May and August or September of the year 1922; that he knew nothing of this testimony until after the trial, and that it was impossible for appellant to know what the witness Myers would testify, as Myers had not communicated to appellant that he knew and would testify to the above alleged facts before the trial.

1. The appellant concedes that there is some testimony to warrant the jury in finding that the prosecutrix was corroborated as to the express promise of marriage. But he contends that there is no substantial testimony to corroborate the prosecutrix as to the act of sexual intercourse. The law requires that the testimony of the prosecutrix must be corroborated both as to the promise of marriage and as to the act of sexual intercourse. *Hope* v. *State,* 40 Ark. 482; *Lasater* v. *State,* 77 Ark. 468; *Nichols* v. *State,* 97 Ark. 421. But we cannot concur in the view that there is no substantial testimony to corroborate the prosecutrix as to the act of sexual intercourse. The fact that the child was born to the prosecutrix is corroboration of her testimony as to the act of sexual intercourse, and the testimony of her father and mother, showing the intimate association between the prosecutrix and the appellant and that there were numerous opportunities for such intercourse, afford substantial corroboration of her testimony to the effect that there was such intercourse. The corroboration may be by circumstances as well as by direct proof. *Patrick* v. *State,* 135 Ark. 173.

The nature of the offense is such as to necessarily make it most difficult, except under extraordinary conditions, to corroborate the testimony of the prosecutrix as to the act of sexual intercourse.    Ordinarily such corroboration may only be established by circumstantial evidence. "Only such corroborative evidence is required as, in the nature of the case, is obtainable, and, when produced, though circumstantial and slight in character, a case is made for the jury to determine."    24 R. C. L., par. 63, p. 779; *Brooks* v. *State,* 126 Ark. 98; *Jackson* v. *State,* 154 Ark. 119.

2. The appellant, by his witness, Hubert Fears, sought to establish, inferentially at least, the fact that the prosecutrix was guilty of unbecoming conduct with one George Ballinger, while returning to her home from a party at an unseasonable hour, in the year 1919.    The appellant having elicited this testimony, it was clearly within the province of the State, on cross-examination, to elicit from the witness all the facts and circumstances within his knowledge concerning the occasion and the witness' connection therewith.    This was germane, as testing the accuracy of the witness' recollection and the credibility of his testimony.    The State did not transcend the bounds of legitimate cross-examination in the questions propounded to the witness Fears.

3. Instruction No. 4, set out above, was a correct declaration of law.    *Polk* v. *State,* 40 Ark. 482; *Cooper* v. *State,* 86 Ark. 31.    Counsel for appellant, in his brief, states that, in giving the instruction, the trial court announced: "This is the instruction given in a similar case and approved by the Supreme Court of this State." Counsel contend that such remarks were prejudicial to the appellant, but we do not discover in the bill of exceptions that the trial court made any such remarks.    Therefore this ground of the appellant's motion for a new trial presents no question for our consideration.    The record only shows that the court gave the instruction, and that the appellant reserved an exception to the ruling of the court in giving the instruction.

4. The court did not err in refusing to grant the appellant a new trial on the ground of newly discovered evidence. The record shows that the court had granted appellant's motion for a continuance at a prior term of the court, one of the grounds being that appellant would prove by certain witnesses named that these witnesses had had sexual intercourse with the prosecutrix, and that she was therefore an unchaste woman. The alleged testimony of the witness Myers, which appellant stated that he discovered only after the trial, and could not have discovered before, was in the same category as that for which a continuance had once before been granted. The mere statement, in appellant's motion for a continuance, to the effect that it was impossible for the appellant to state what the witness Myers would testify until after the trial was completed, because the witness Myers had not told him the facts, is not sufficient to show that appellant had used due diligence to discover such testimony. *Lind* v. *State,* 132 Ark. 92. Moreover, this alleged testimony of Myers was, after all, testimony which only would have tended to impeach the credibility of the prosecutrix, because she testified that she had never had sexual intercourse with any one except the appellant.

This court has often ruled that newly discovered evidence which goes only to impeach the credibility of a witness is not a ground for a new trial. *Morris* v. *State,* 145 Ark. 245, and cases there cited.

5. The appellant contends, in the last place, that the court erred in permitting the testimony of George Boyd, the father of the prosecutrix, to the effect that she made pillow shams and quilts and put them away, and that she would say she was going to get married. Upon general objection being made to this testimony by the appellant, the court ruled that the witness could not state what his daughter said and what she told him in regard to the pillow shams and quilts, and instructed the jury that they should not consider that in rendering their verdict.

In *Bethel* v. *State,* 162 Ark. 76, we said: "In the Carrens case we held that the injured female could not

be corroborated merely by her own letters to the accused, and in the Woodard case, *supra,* we held that neither acts nor declarations of the injured female, in the absence of the defendant, were competent testimony for the purpose of corroborating her as to the promise of marriage.'' See *Woodard* v. *State,* 143 Ark. 404. The appellant contends that the ruling of the court in admitting the above testimony was error on the authority of these cases. But it occurs to us, from the record of the court's rulings, as above set forth, that it was the intention of the court to exclude the above testimony. The testimony of the witness as to what his daughter did and what she said was all in the same sentence, and, when the appellant objected generally to this testimony, the court ruled that the witness could not testify as to what his daughter had said—as to what she had told him. Evidently the court meant to rule that the entire testimony was improper, and to exclude the same from the jury. If the appellant conceived that such was not the effect of the ruling of the court, but that the ruling was only to exclude that part of the testimony of the witness concerning what his daughter told him and what his daughter said, but not that part of his testimony as to what his daughter did in the way of making pillow shams and quilts, then, in fairness to the trial court, counsel for appellant should have drawn the attention of the trial court by specific objection to the effect that the court had not excluded that part of the testimony of the witness that his daughter had made pillow shams and quilts. The objection made by counsel for appellant is not sufficiently specific to entitle him to a reversal for an error in the court's ruling, when it was obvious that the court intended to rule in his favor and to exclude all of the testimony to which he was objecting. The ruling is susceptible of such construction, and we believe that its effect was to exclude from the jury the entire testimony of Boyd to which appellant objected. *Stevens* v. *State,* 143 Ark. 618, at p. 624. But, if counsel for appellant conceived that such was not its effect, then, as we have stated, he should have laid his finger on that

part of the testimony which he now urges the court failed to exclude, and made a specific request of the court to exclude that also. This he did not do.

In the whole case the record presents no error in the rulings of the trial court prejudicial to the appellant. Its judgment is therefore affirmed.