# Richmond

JOSEPH MARSHALL TYREE V. COMMONWEALTH OF VIRGINIA.

October 14, 1946.

Record No. 3107.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*William Kinckle Allen* and *Edward J. Hotchkiss, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *W. Carrington Thompson, Assistant Attorney General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Joseph Marshall Tyree, the accused, was indicted, tried by a jury, and convicted of the seduction of Nancy Bryant. His punishment was fixed at two years in the penitentiary.

Nancy Bryant, who was sixteen years of age at the time of the alleged seduction, had been reared in the rural section of Amherst county. She had attended the public schools of the county, and at the time she was in the first year high school. In 1943 she left home, went to Lynchburg and became employed in the plant of the Old Dominion Box Company. After a few months she stopped work and returned to her home in Amherst county. During the time she was in Lynchburg she made her home with her brother.

In March, 1944, she returned to Lynchburg to work for the same company. She obtained board and lodging with Mrs. J. J. Tyree, the mother of the accused. Mrs. Tyree lived in Madison Heights, which is immediately across the James river from Lynchburg. The accused and his family also lived in the home of his mother, Mrs. Tyree. He was married in 1934, and is the father of two children, one ten years of age, and the other six. For approximately twenty years he had been employed by J. W. Wood and Company, a wholesale grocery concern in Lynchburg. The place of business of this company was directly across the street from the place of business of the Old Dominion Box Company.

The accused first met the prosecutrix in his mother's home, and the first time that he paid any attention to her was two weeks prior to May 24, 1944. At that time she was standing before a mirror in the bedroom of Mrs. Tyree, the mother, combing her hair. The accused came in, caught her around the shoulders, and told her that she was pretty enough without having to "fix-up". At noon on May 24, 1944, Nancy Bryant was standing in the window of the plant of the Old Dominion Box Company. The accused, who worked across the street, called to her and told her to meet him that night at 7:30 at the Academy Theatre on a business matter. When she arrived at the appointed place he told her he could not say what he wished to say at that place and suggested that they get in his car, whereupon they got in his car and he drove out on a lonely road in Amherst county. Here he professed to love the prosecutrix. He told her that there was no affection between his wife and himself and promised to marry her. Later she yielded to him and had sexual intercourse. They continued this conduct on Monday, Wednesday, and Friday nights of each week.

The accused gave her presents. On one occasion he gave her a ring, and on another he presented her with a watch.

Late in July the prosecutrix discovered that she was pregnant, quit her job and went to the home of her sister

in Amherst county. She told the accused of her condition. He accepted full responsibility for it and gave her medicine, a fifth of whiskey, and two pistols. In October, 1944, the prosecutrix's sister discovered that she was missing from home, and upon finding her some two hundred and fifty yards from the house, the prosecutrix, who was crying, told her sister about her pregnancy. Later her father and brothers also learned of her condition.

In November the accused drove out to the sister's home to call upon the prosecutrix, as was his custom. Upon his arrival, her brother, who had been waiting for him, refused to permit his sister to leave with him. Then, at his suggestion, the accused and Nancy drove to the home of Nancy's father. There the accused told Mr. Bryant, the father, that he was responsible for Nancy's condition, and begged for a chance to get a divorce from his wife so he could marry Nancy. The father then told him to meet them the next day at the office of the Commonwealth's Attorney in Amherst. In the meantime the accused agreed to pay the board of Nancy at her sister's home at the rate of $5 per week. He paid it for three weeks.

The parties met at Amherst the next day, and Mr. Bryant, the father, decided to allow the accused sixty days to arrange his affairs so that he could marry the prosecutrix. During the sixty days nothing happened. The accused pretended that everything would be all right in a few days, and that he would secure his divorce decree and marry Nancy. However, he continued to put it off. Later the accused proposed to compromise the matter by paying to the father of the prosecutrix the sum of $1,500. This was agreed upon and the accused agreed to bring the money and make the payment the next day. That night he telephoned that the proposition was all off and that he did not intend to negotiate any further. He was then arrested and indicted. Between the time that he was arrested on the warrant and the return of the indictment he continued to have sexual intercourse with the prosecutrix and attempted to elope with

her. The child was born to the prosecutrix on April 21, 1945.

The defense consisted of a complete denial. The accused denied that he had ever been alone with the prosecutrix. His statement in this regard was contradicted by several witnesses who had no interest. On May 24, 1944, at the time of the alleged seduction, he claims to have gone to prayer meeting. He also claims that the prosecutrix accused him because she had seen him and his wife counting a sum of money and thought it a good opportunity to blackmail him. He admits that he paid her board, but claims that he did this in order to prevent the information from reaching his wife.

One George Campbell testified that he had had sexual intercourse with the prosecutrix on three occasions prior to the alleged seduction. He had lived in the Bryant home. However, the prosecutrix denied these acts, and considerable testimony was introduced by witnesses who stated that they would not believe Campbell on oath.

The prosecution was had under section 4410 of the Code of Virginia, 1919 (Code 1887, sec. 3677). That section reads as follows:

"If any person, under promise of marriage, conditional or unconditional, seduce and have illicit connection with any unmarried female of previous chaste character, or if any married man seduce and have illicit connection with any unmarried female of previous chaste character, he shall be guilty of a felony, and, upon conviction thereof, shall be punished by confinement in the penitentiary not less than two, nor more than ten years. For the purposes of this section, the chastity of the female shall be presumed, in the absence of evidence to the contrary."

Under Code, 1919, sec. 4413, no conviction shall be had under sec. 4410 "on the testimony of the female seduced * * * unsupported by other evidence, nor unless the indictment shall be found within two years after the commission of the offense".

There were eight assignments of error. The first assign-

ment is directed at instructions numbers 2 and 3, granted at the request of the Commonwealth. Those instructions are as follows:

"2. The court instructs the jury that while they cannot convict the defendant on the uncorroborated testimony of the prosecutrix, yet if the admissions of the defendant and other surrounding circumstances substantiate her testimony so as to satisfy your minds, beyond a reasonable doubt, of the truth of her statements, then this is sufficient."

"3. The court instructs the jury that the exact time of the seduction is never material in a prosecution for this offense, and that, it is not, therefore, essential that the prosecutrix should be corroborated as to the exact date; it is only necessary to show that the prosecution was instituted within the statutory period in that the indictment upon which it is based was found within two years after the commission of the alleged offense."

The basis of the objection to instruction number 2 is that it assumes that there were admissions and surrounding circumstances that would corroborate the charge of seduction. It is contended that the instruction takes away from the jury the right to pass upon the question as to whether there were any admissions or other surrounding circumstances.

There was very little conflict in the evidence regarding the incriminating circumstances and the admissions of the accused. In fact, the accused testified as to some of them. He testified that he paid the board of the prosecutrix for three weeks at $5 per week, and that he had been to the Bryant home in connection with the affair. He also testified that he had met the Bryants and the prosecutrix in the office of the Commonwealth's Attorney at Amherst to discuss the matter. His admissions, and the pertinent incriminating circumstances which were also detailed by several witnesses, were overwhelmingly established.

██ The testimony of the prosecutrix need not be corroborated in every detail. The statute (section 4413) simply provides that no conviction shall be had on the testimony of the female seduced "unsupported by other evidence". Her

testimony in this case is supported by other evidence of a substantial character. In the light of these considerations instruction number 2 was appropriate and proper.

A like instruction was specifically approved in *Atkins* v. *Commonwealth*, 132 Va. 500, 110 S. E. 379. In the case at bar the court granted instructions "E" and "F", which, when read with instruction No. 2, also will entirely eliminate the objection of the accused.

The objection to instruction No. 3 is that inasmuch as the accused testified that at the time he was at a place other than the place where the seduction is alleged to have occurred, this in itself made it important that the Commonwealth prove the exact time of the seduction. However, in *Shaver* v. *Commonwealth*, 151 Va. 545, 145 S. E. 377, this court held contrary to the contention of the accused. There the contention was that the jury should have been instructed to acquit the defendant unless the alleged seduction took place on December 25, 1925. This court held, after an exhaustive discussion, that the general rule clearly refutes such a contention. In that case there was evidence tending to contradict the prosecutrix that the seduction had taken place on December 25, and the accused insisted that, inasmuch as there was some evidence tending to establish an alibi, the instruction was proper. The court, however, denied his contention.

In Virginia, proof of the exact time of the seduction is not material as long as it is shown to have taken place within the statutory limit. Likewise, corroborating proof of the exact time is not necessary.

The accused objected to the amendment of instruction "A", and in deleting therefrom this language: "and in considering the evidence in this case the jury should consider whether or not the woman knew the accused was a married man and that he could not marry her."

The position of the accused is that the Commonwealth must not only prove that the prosecutrix was seduced under a promise of marriage, but that her testimony must be corroborated as to the promise of marriage. He asserts that she

knew that he was a married man at the time she claims he promised to marry her.

Our statute, section 4410, does not require, in the case of a married man, that there be a promise of marriage. The language of the statute is, "or if any married man seduce and have illicit connection with any unmarried female of previous chaste character". Knowledge by the prosecutrix that the accused was a married man does not bar the prosecution. See *Flick* v. *Commonwealth*, 97 Va. 766, 34 S. E. 39, and *Limbaugh* v. *Commonwealth*, 149 Va. 383, 140 S. E. 133. In each of these cases the prosecutrix knew that her seducer was a married man.

The accused offered instruction "B", which reads as follows:

"The court instructs the jury that unless they believe Nancy Bryant was a female of previous chaste character, that is, that she had never before had sexual intercourse with a man, then, regardless of how many times she may have afterward had intercourse with Tyree, the jury must acquit the accused and find him not guilty of seduction, and the court further tells the jury that when evidence is introduced tending to prove the woman, before the alleged sexual relations with Tyree, had already had such relations with other men, the presumption of a pure and chaste character on the part of Nancy Bryant has been overcome, and the burden is on the Commonwealth to prove to you beyond all reasonable doubt not only that Tyree seduced her, but that, in addition it has been proven to you beyond all reasonable doubt that she was a pure and chaste woman at the time of the alleged sexual intercourse between her and Tyree, and if the jury do not know or are in doubt as to whether she had formerly had sexual relations with a man prior to the alleged relations with Tyree, the jury must give the accused the benefit of the doubt, for the burden is upon the Commonwealth to prove her chastity beyond all reasonable doubt, and in the absence of such proof, the jury must acquit the accused and find him not guilty of seduction."

We think that the trial court was correct in refusing

instruction "B". The fact that a witness on behalf of the accused testified that he had had illicit sexual relations with the prosecutrix prior to the time of her alleged seduction does not cast upon the Commonwealth the burden of proving her chastity. The prosecuting witness emphatically denied that she had ever had sexual relations with any man prior to the time that she claimed to have been seduced. In *Barker* v. *Commonwealth*, 90 Va. 820, 823, 20 S. E. 776, the court held:

"It was argued at the bar in this connection, that it devolved upon the Commonwealth to prove affirmatively, in order to convict the prisoner, that the prosecutrix was of previous chaste character, and that the jury ought to have been so instructed. But such is not the law. On the contrary, chastity is presumed, and the burden was on the prisoner to impeach it. *People* v. *Clark*, 33 Mich. 112; *Polk* v. *State*, 40 Ark. 482, 48 Am. Rep. 17; *State* v. *McClintic*, 73 Iowa 663, 35 N. W. 696; *Wilson* v. *State*, 73 Ala. 527. In *People* v. *Brewer*, 27 Mich. 134, Judge Cooley, speaking for the court, said: 'The last error we shall notice is, that the court erred in instructing the jury that the law presumes a woman to be chaste until the contrary is shown. We believe this instruction to be correct. The presumption of law should be in accordance with the general fact; and whenever it shall be true of any country that the women, as a general fact, are not chaste, the foundations of civil society will be wholly broken up. Fortunately in our country an unchaste female is comparatively a rare exception to the general rule; and whoever relies upon the existence of the exception in a particular case should be required to prove it.' "

See also, *Mills* v. *Commonwealth*, 93 Va. 815, 22 S. E. 863, and *Flick* v. *Commonwealth*, *supra*.

The Virginia statute requires that the prosecutrix be a woman of previous chaste character before she can be the victim of a seduction, but her chastity is presumed in the absence of evidence to the contrary. The burden is upon the defendant to adduce evidence that will, at least, raise a reasonable doubt as to her chastity when he relies

upon that as a defense. Whether there is a reasonable doubt is, of course, to be determined by the jury.

Our court, as already indicated, in *Mills* v. *Commonwealth*, 93 Va. 815, 22 S. E. 863, *Flick* v. *Commonwealth*, 97 Va. 766, 34 S. E. 39, and *Barker* v. *Commonwealth*, 90 Va. 820, 20 S. E. 776, has unqualifiedly held that the chastity of a prosecutrix in a seduction case would be presumed. The burden of impeaching it was upon the accused. Prior to the Code revision of 1919 this principle had not been incorporated in our statute, section 4410, but the revisors thought it should be statutory and accordingly added the last sentence to the section embodying it.

In the case at bar, however, no instruction was requested or granted submitting the presumption of chastity of the prosecutrix to the jury. On the other hand, instructions "E" and "F" expressly imparted to the jury the familiar principle that the burden of proof was upon the Commonwealth to make out its case, and that the accused was presumed innocent. The chastity of the prosecutrix was placed in issue before the jury. She maintained that she was virtuous before the seduction. The accused attempted to attack her chastity and produced a witness who brazenly testified that he had had sexual intercourse with her prior to the seduction. The jury did not believe him and resolved the issue in her favor without the benefit of the presumption authorized by the statute. The evidence was sufficient.

An assignment of error is directed at the court's failure to grant Instruction "M", requested by the accused. This assignment cannot be considered because there has been a failure to comply with our rule 22. The record fails to show that the accused objected to the action of the court in not granting the instruction, and it does not show that any exception was taken to the court's action.

Another assignment is that the evidence fails to support the verdict, but we think there is no merit in this assignment. The case was one peculiarly for the jury, and we think that the verdict is amply supported.

It is argued that there was no proof of seduction in this case, and the jury were not warranted in so finding.

In *Flick* v. *Commonwealth, supra,* at pages 769-770, it was held:

"It must be borne in mind that the offense here charged is seduction by a married man, which, of itself, excludes many of the arts, wiles, * * * which may be brought to bear by a single man to establish a footing and influence with a woman, and thus become the means by which he accomplishes her ruin."

And again on page 770 is this language:

"In all cases arising under section 3677 (now 4410) of the Code, it is conceded that there must be seduction superadded to illicit connection to constitute the crime. To seduce is to lead astray from the path of virtue. It does not consist in arts and blandishments. They are the means by which the crime is accomplished, and not the crime itself * * * ."

In *Limbaugh* v. *Commonwealth, supra,* at pages 395-396, seduction by a married man is thus defined:

"It thus appears that there may be seduction by a married man, without 'urgent importunity based upon professions of attachment', and that the offense consists in leading astray from the paths of virtue of a female of previous chaste character. If other means than appeals to the affection of the female overcome her scruples, debase her nature and draw her aside from the path of virtue, the offense has been committed. If the enticements and influences used to accomplish the purpose of 'overcoming her reluctance and scruples' and cause her to submit to the intercourse to which she would not otherwise have submitted, 'they are sufficient in law.' "

The following excerpts taken from the record of the testimony of the prosecutrix will demonstrate the sufficiency of the evidence to establish the seduction in this case:

"A. Well, it was on the 24th day of May, 1944. I was working over at the Old Dominion and he worked over at J. W. Wood's, and he called me across the street. I was

standing in the window at lunch time. He called me across the street and told me to meet him at the Academy Theatre on business at 7:30, and I met him there, and when I met him at the Academy Theatre he asked me to leave with him—he couldn't tell me inside the theatre what he had to tell me, so we left and drove around in town, over on Floyd Street, and then he started telling me about how him and his wife got along; that they had not got along for three years, only lived together for the sake of the children, and he didn't care anything about her and she didn't care anything about him. We went out to W. T. Thomas' store—

"Q. (interposing) Did you drive around town before you went out there?

"A. We went out on Floyd Street, up that way, and then made a straight cut out there.

"Q. Whose car were you riding in?

"A. In his— '35 Chevrolet— blue.

"Q. Well, go ahead.

"A. Well, we got out to the other side of W. T. Thomas' store, on that road down there. I was young and he persuaded me into it.

"Q. Now, tell us whether or not he stopped the car.

"A. He stopped the car and we talked a few minutes. He told me he had loved me ever since he laid eyes on me and that had been about three years ago when I was just a child.

"Q. How old were you at that time?

"A. I was sixteen. It was four months after I was sixteen years old.

"Q. What time of night was this, as near as you can tell?

"A. Between 9:30 and 10:00 o'clock.

"Q. Go ahead and tell the jury just what happened.

"A. Well, he got to loving me and we got in the back seat, and he made promises to me that he would marry me, from the first night on, even if anything didn't happen to

me in that way; that he would marry me because he cared more for me than any girl he had ever known—and he made pretense to me that he did, and I believed him, and then from then on I went with him every Monday, Wednesday and Friday, and sometimes Saturday night.

"Q. Do you mean by what you say that sexual intercourse took place between you and Mr. Tyree?

"A. Yes, sir."

This evidence is quite sufficient to prove, if believed, that the moral scruples of the prosecutrix were overcome and she was led from the path of virtue by the protestations of love and affection of the accused and by the promises he made. It meets the requirements of seduction by a married man as defined in *Flick* v. *Commonwealth, supra,* and *Limbaugh* v. *Commonwealth, supra.*

Whether the testimony, in its essential particulars, was sufficiently corroborated was for the jury, and by its verdict it has concluded the question against the accused.

In *Shaver* v. *Commonwealth,* 151 Va. 545, at pages 552-553, corroboration of the victim of seduction is defined and held to be for the jury. Mr. Chief Justice Prentis, speaking for the court, reiterated the familiar rule:

"That this is the accepted rule cannot be fairly doubted. It is not necessary in such cases that the supporting evidence be such as would be sufficient to convict without the evidence of the prosecutrix, but merely of such pertinent facts and significant circumstances as tend clearly to support her testimony, and which satisfy the jury that she is worthy of credit. If there is such other testimony so fairly tending to support the prosecutrix's testimony as to the facts necessary to constitute the offense, generally it is for the jury to say whether or not she is corroborated. *Wright* v. *State,* 31 Tex. Cr. 354, 20 S. W. 756, 37 Am. St. Rep. 822; *Woodard* v. *State,* 143 Ark. 404, 405, 226 S. W. 124; *Dooms* v. *State,* 164 Ark. 50, 260 S. W. 708; *McMaster* v. *State,* 163 Ark. 194, 260 S. W. 45; *State* v. *Ellis,* 1 W. W. Harr. (31 Del.) 156, 112 A. 172; *State* v.

*Whitaker*, 103 S. C. 210, 87 S. E. 1001, Ann. Cas. 1918E, 467, 468, note."

The evidence in the case at bar, including the admissions of the accused, the surrounding circumstances and the testimony of the witnesses, meet the requirement of the principle of corroboration in seduction cases as defined in *Shaver* v. *Commonweath, supra,* certainly to the extent of rendering it proper to submit the issue to the jury as was done in this case.

Point was made that the court improperly stopped the cross-examination of a witness by counsel for the accused. After a lengthy cross-examination of the witness, the court told counsel he was wasting too much time, and that the questions being asked the witness were immaterial. Exception was taken to the remarks of the court, and for this alleged improper conduct on its part a reversal of the judgment is sought.

We have scanned the evidence of the particular witness with great care and are of the opinion that the indicated questions to which the court objected were, in fact, immaterial. If counsel asks a question on cross-examination that is obviously immaterial he is in no position to complain if the court pronounces it so.

A mistrial was requested because of the alleged improper remarks of the Commonwealth's Attorney. A consideration of them will demonstrate that they were not of sufficient harm to the accused to require such drastic action. The court committed no reversible error in its ruling. Even if the remarks were harmful—and we do not think they were —the court carefully instructed the jury to disregard them. Nothing is reflected in the verdict which indicates that the jury was actuated by any prejudice. *Trout* v. *Commonwealth,* 167 Va. 511, 188 S. E. 219.

We are of opinion that the judgment should be affirmed.

*Affirmed.*