# Richmond

RALPH EDWARD FLEENOR v. COMMONWEALTH OF VIRGINIA.

October 13, 1958.

Record No. 4867.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Ralph H. Brumet* and *George M. Warren, Jr.*, for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General*, on brief), for the Commonwealth.

EGGLESTON, C. J., delivered the opinion of the court.

■ Ralph Edward Fleenor was convicted by a jury of seduction under promise of marriage of Nancy Ellis, an unmarried female of previous chaste character, in violation of Code, § 18-48,* and his punishment fixed at confinement in the penitentiary for two years. We granted a writ of error to the judgment entered on the verdict.

In his assignments of error the defendant makes the contentions that (1) the verdict is contrary to the evidence because it plainly shows that the prosecutrix at the time of the alleged seduction was not of previous chaste character; and (2) the lower court improperly admitted evidence which tended to show that he was guilty of the unrelated crime of larceny.

Nancy Ellis, the prosecutrix, testified that she met the defendant in March, 1956, when she was sixteen years old and working in a local confectionery. Shortly thereafter they began "going together regularly" and by May of that year were in love. He gave her an engagement ring and they talked of being married. Because of their ages, he being eighteen and she seventeen, they considered going to South Carolina to be married.

She further related that in May, 1956, while she and the defendant were at the home of a mutual friend, she drank a mixture of beer and whiskey and "became somewhat intoxicated." The defendant suggested that since they were in love and shortly would be married, there was "no use waiting" and they should have intercourse. She yielded to his advances on that occasion which, she says, was her first experience of that kind. Because of repeated expressions of his love for and promise to marry her, she yielded to his further advances and frequently had intercourse with him in the summer of that year. In August she became pregnant. On September 18 the defendant wrote her a letter expressing his love for her. On January 1, 1957, he wrote her a similar letter expressing his deep affection for her and their baby which he knew would be born within a few months.

---

* "§ 18-48. *Seduction of female of previous chaste character.*—If any person, under promise of marriage, conditional or unconditional, seduce and have illicit connection with any unmarried female of previous chaste character, or if any married man seduce and have illicit connection with any unmarried female of previous chaste character, he shall be guilty of a felony, and, upon conviction thereof, shall be punished by confinement in the penitentiary not less than two, nor more than ten years. For the purposes of this section, the chastity of the female shall be presumed, in the absence of evidence to the contrary."

In the meantime, in December, 1956, the defendant had told the parents and sister of the prosecutrix of his love for her and intention to marry her. However, upon one pretext or another, he postponed the marriage and it never occurred. He finally told her, in February or March, 1957, that he had discovered that she had been intimate with others and for that reason he was not going to marry her. On May 20 the prosecutrix gave birth to a child.

There is little conflict between the testimony of the prosecutrix and that of the defendant. He admitted that they were in love during the spring and summer of 1956; that he gave her an engagement ring, and that they frequently discussed marriage. But he denied that there had been any promise of marriage before the first intercourse.

On this appeal the defendant concedes that the verdict of the jury has settled all conflicts in the evidence adversely to him and that there is sufficient evidence to sustain the finding of seduction under promise of marriage. But he vigorously contends that it is firmly established by the evidence that at the time of the seduction the prosecutrix was not of previous chaste character.

As has been said, the prosecutrix testified that prior to her affair with the defendant she had not had intercourse with any other man. She further testified that during their engagement she "stayed pure" and remained faithful to him.

On the other hand, Jessee Loudy, a witness on behalf of the defendant, testified that he had intercourse with the prosecutrix on two occasions in the summer of 1956. Mrs. Estes, in whose home the seduction is admitted to have taken place, testified that the prosecutrix suffered a miscarriage at her apartment in February or March, 1956. The prosecutrix vigorously and emphatically denied the truth of these reflections upon her virtue. Moreover, there is evidence of her good and virtuous character from her father, mother, sister and neighbors.

Mrs. Estes further testified that on the day of the trial the prosecutrix told her that she would withdraw the charges against the defendant if he would pay her the sum of $500 to defray her hospital and medical expenses. The prosecutrix vigorously denied this.

It will be observed that under the terms of the statute (Code, § 18-48) chastity is presumed in the absence of evidence to the contrary. Thus, the burden is upon the accused to adduce evidence that will at least raise a reasonable doubt as to the chastity of the

prosecutrix, when he relies upon that as a defense. Whether such reasonable doubt has been shown is ordinarily to be determined by the jury. *Tyree* v. *Commonwealth*, 185 Va. 628, 638, 639, 39 S. E. 2d 627, 631.

In the present case the presumption of chastity has been supplemented by evidence on behalf of the prosecutrix, and the verdict of the jury is conclusive of the matter.

■ The admission of evidence of the unrelated crime of larceny, of which the defendant next complains, arose in this manner: On the third page of the defendant's letter of September 18, 1956, to the prosecutrix, offered by the Commonwealth, the defendant admitted that he and a companion had stolen "about $75.00 worth" of clothing from a local store, and that while they had disposed of the articles, both were under suspicion and might be arrested. On objection by counsel for the defendant this page of the letter was excluded from the jury. But the letter continued on the next page, "and don't you get worried either that is if you love me enough to care they can't prove we got them, Honey don't let anybody else read this, that is if they can read my writing. Honey I hate to write you all this but I got to tell somebody you're the only one I can talk to * * *."

The refusal of the lower court to delete this language from that portion of the letter shown to the jury is assigned as error.

During the cross-examination of the prosecutrix she was asked whether or not she had told Mrs. Estes on the day of the trial that she would withdraw the charges against the defendant if he would pay her $500. The prosecutrix denied that she had made this proposition, but continued by saying that Mrs. Estes had then told her, "Don't you know that they served another warrant on him." On the defendant's objection the prosecutrix was told to confine her testimony to her alleged proposition that she would withdraw the charges upon the payment of $500. Again, the prosecutrix denied that she had made this proposition.

On redirect examination the Commonwealth's attorney again brought up the subject of the conversation between the prosecutrix and Mrs. Estes. The prosecutrix was asked what Mrs. Estes had said to her. Her answer was, "She said, 'Do you know they took a warrant out for—.' " Objection to the answer by counsel for the defendant was overruled, the court stating, "She is entitled to state the whole conversation." Thereupon the prosecutrix said: "I will

tell you what she told me, what she called me in there for, to tell me that they had taken a warrant out for him, because you know he had a part in the robbery of Rayless' store."

Counsel for the defendant again objected and moved for a mistrial. The court then ruled that the answer was not responsive and that the jury should "disregard that statement." There was a short recess and after the trial was resumed the court suggested to the Commonwealth's attorney that the prosecutrix be further examined with reference to her conversation with Mrs. Estes.

Counsel for the defendant objected that this would accentuate the objectionable evidence. This objection was overruled and the prosecutrix was told that she should relate "just exactly" what Mrs. Estes had said to her. Her reply was: "Just exactly, okay. When she called me back there she said, 'Nancy, do you know that they have issued another warrant out for Buddy'—Ralph, rather. I said no, I didn't. I asked her what for and she said it was for that robbery that he had part in. And I said I didn't know that. I said I didn't know that they had taken one out for him. I said I am sorry, but I cannot sympathize with him because he has left me with all this to pay, doctor bill, my hospital bill and several other things. She said, 'Well,' she said, 'he will pay you $500.00 and he will pay you all you have paid out.' And that was all that was stated on that."

After this statement the court, in substance, told the jury that while the entire conversation had been admitted, the jury should not take into consideration "any conversation about some other supposed crime," since it had nothing to do with the guilt or innocence of the defendant on the charge on which he was being tried. The court then addressed the jury, saying: "If there are any of you who think you cannot disregard this other matter which has come in incidentally, and render a fair and impartial verdict on the evidence which is proper and not consider that evidence, I wish you would please indicate it now." The record states that in response to that inquiry, "all of the jurors remained silent" and the trial was resumed.

The defendant excepted to this disposition of the matter. After the adverse verdict had been rendered, he unsuccessfully moved that it be set aside because of these rulings on the admissibility of this evidence.

It is well settled in this State, and elsewhere, that evidence which tends to show that an accused has committed another crime inde-

pendent of, and unconnected with, that for which he is on trial is inadmissible. This is upon the principle that such evidence confuses the issue before the jury, unfairly surprises the accused with a charge he is not prepared to meet, and tends to prejudice him in the minds of the jury by showing his depravity or criminal propensity. *Roy* v. *Commonwealth*, 191 Va. 722, 726, 62 S.E. 2d 902, 903, and cases there cited; 7 Mich. Jur., Evidence, § 48, p. 390 *ff;* 20 Am. Jur., Evidence, § 309, p. 287 *ff;* 22 C. J. S., Criminal Law, § 682, p. 1084 *ff.*

While there are exceptions to this general rule (*Roy* v. *Commonwealth, supra; McWhorter* v. *Commonwealth*, 191 Va. 857, 870, 63 S. E. 2d 20, 26), none is here involved. Here the defendant was on trial for the offense of seduction. Evidence which tended to show that he was guilty of the unrelated crime of larceny threw no light on the issue upon which he was being tried. It had the effect of impeaching his character, which he had not put in issue, and led to the inference that because of a criminal propensity he probably committed the crime for which he was being tried.

The exclusion from the jury of a portion of the letter which the defendant had written the prosecutrix, coupled with the language on the next page which the lower court declined to delete, indicated to the jury that the defendant was in serious difficulty with the authorities because of some other offense which he had committed.

The irrelevant evidence was further emphasized during the testimony of the prosecutrix with reference to her conversation with Mrs. Estes. As has been stated, during the course of this examination, the prosecutrix testified that Mrs. Estes informed her that a warrant had been issued against the defendant for his "part in the robbery of Rayless' store." After having properly excluded this evidence, the lower court changed its ruling and suggested that the Commonwealth's attorney reopen the subject which, as counsel for the defendant pointed out, tended to "accentuate" the objectionable evidence.

Obviously, the admission of such improper and prejudicial evidence cannot be justified, as the Commonwealth argues, on the ground that the prosecutrix was merely relating the entire conversation which had taken place between her and Mrs. Estes. Indeed, the lower court so ruled when it told the jury to disregard it.

However, the effect of the repeated introduction of this improper evidence was such that it could not be expunged from the minds

of the jury by the direction that they should not consider it in arriving at their verdict. The motion of the defendant for a new trial should have been granted.

The judgment will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*