Tuesday                    14th

June, 2005.

Raymond Brian Thomas, Sr.,                                                    Appellant,

 against            Record No. 2889-03-4
                    Circuit Court No. CR102377

Commonwealth of Virginia,                                                     Appellee.

Upon Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
Clements, Felton, Kelsey, McClanahan and Haley

Steven A. Merril (Laura P. Leibowitz; Whitestone, Brent, Young &
Merril, P.C., on brief), for appellant.

Steven A. Witmer, Assistant Attorney General (Judith Williams Jadgmann,
Attorney General, on brief), for appellee.


By published opinion dated January 25, 2005, a panel of this Court affirmed the judgment of the

trial court.  We stayed the mandate of that decision and granted rehearing *en banc*.  Upon

reconsideration, the stay of this Court's January 25, 2005 mandate is lifted and we affirm the trial court

for the reasons stated in the majority opinion in Thomas v. Commonwealth, 44 Va. App. 741, 607

S.E.2d 738 (2005), and adopt that opinion as our own.

Judges Benton, Elder, and Clements would reverse the trial court for the reasons set forth in the

panel dissenting opinion.  Chief Judge Fitzpatrick agrees with the dissent that the trial court erred in

allowing the disputed evidence.  However, she would hold that the other evidence of guilt is

overwhelming and, thus, the error could not have affected the verdict.

This order shall be published and certified to the trial court.

A Copy,
Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Tuesday                    1st

March, 2005.

Raymond Brian Thomas, Sr.,                                                    Appellant,

 against          Record No. 2889-03-4
                 Circuit Court No. CR102377

Commonwealth of Virginia,                                                    Appellee.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank,
Humphreys, Clements, Felton, Kelsey and McClanahan


On February 4, 2005 came the appellant, by counsel, and filed a petition praying that the

Court set aside the judgment rendered herein on January 25, 2005, and grant a rehearing *en banc*

thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate

entered herein on January 25, 2005 is stayed pending the decision of the Court *en banc*, and the

appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellant shall attach as

an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously

rendered by the Court in this matter.  It is further ordered that the appellant shall file with the

clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk
By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Bumgardner and Kelsey
Argued at Alexandria, Virginia

RAYMOND BRIAN THOMAS, SR.

OPINION BY
v.      Record No. 2889-03-4          JUDGE D. ARTHUR KELSEY
JANUARY 25, 2005

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Steven A. Merril (Laura P. Leibowitz; Whitestone, Brent, Young &
Merril, P.C., on brief), for appellant.

Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.

Raymond Thomas challenges his jury conviction for possession of a firearm by a felon in

violation of Code § 18.2-308.2. We find that Thomas waived all but one of his arguments by not

properly raising them at trial. On the one question preserved for appellate review — whether the

court erred in admitting into evidence 46 plastic baggies described by an expert narcotics officer as

indicative of drug distribution — we hold the court did not abuse its discretion in admitting this

evidence. We thus affirm Thomas's conviction.

I.

We review the evidence in the "light most favorable" to the Commonwealth, the prevailing

party in the trial court. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

"On appeal this court must 'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and *all*

*fair inferences to be drawn therefrom*.'" Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d

755, 759 (1980) (citation omitted and emphasis in original).

Officers Darren DeCoster and Sean Bauer stopped Thomas's vehicle on a suspected traffic violation. During the stop, DeCoster asked for and received consent to search the vehicle. "Immediately upon entering the vehicle," the officer testified, he smelled the "odor of marijuana coming from the vehicle" and found "residue of marijuana throughout the entire vehicle, in the seats, on the floorboard, in the center console, and eventually found some in the trunk."

DeCoster also noticed that a rear seat cushion was "a little bit ajar." He looked under the cushion and found a fully loaded, semi-automatic handgun. "At that point," he testified, "for officer safety purposes, I had some non-verbal communication that I use with my partner." DeCoster then drew his weapon and placed Thomas, who was standing outside the vehicle, under arrest. "At that point in time," Thomas later admitted, "he knew they had found the gun."

When questioned about the firearm, Thomas said he had been "shooting with a friend." His fingerprints might be on the gun, Thomas stated, because he had "shot the gun in the past." Thomas then said he had visited shooting ranges that turned him away "because he was a convicted felon." He and his friend, however, found a range where "the person didn't do their [sic] job, hence not checking him to see if he was a convicted felon."

Officer Bauer transported Thomas's car to the police station. As he was exiting the vehicle, Bauer "grabbed the driver's side door handle to close the vehicle" and "the door handle portion came off" in his hand. Bauer then saw a hidden compartment in the "door frame or door well" ordinarily covered up by a piece of the door secured to the frame. In that compartment, he found a medium-sized zip-lock bag containing 46 smaller zip-lock plastic baggies.

At trial, the Commonwealth introduced into evidence Thomas's prior convictions for burglary and possession of marijuana with intent to distribute. Officer DeCoster testified, without objection, that during his search of the vehicle, he "found the residue of marijuana throughout the entire vehicle, in the seats, on the floorboard, in the center console and eventually

- 2 -

found some in the trunk." When the Commonwealth asked DeCoster about the 46 plastic baggies, however, Thomas objected. "It's drug contraband," the prosecutor replied. It explained why Thomas, an alleged drug dealer, might simultaneously possess a firearm.

After pointing out that Thomas "did not object to the testimony about marijuana residue," the trial judge overruled his objection to the baggies. "It clearly has the potential to prejudice your client," the judge stated to Thomas's counsel, "but I'm not prepared to say it's not relevant." The evidence appeared to be "drug dealing paraphernalia," the judge reasoned, that Thomas allegedly possessed "at the same time" as the firearm.

The trial judge offered a cautionary instruction to Thomas making clear that he was "not charged with any offense relating to drug dealing in this case," and thus, this evidence should be considered only for purposes of deciding the firearm charge. "I can give it to the jury now or I can give it to the jury later," the judge said. Thomas's counsel asked that no such instruction be given until the end of trial when it could be included with the "rest of the instructions."

When asked about the relevance of the 46 plastic baggies, Officer DeCoster testified as a drug interdiction expert that the baggies were "indicative of illegal narcotics distribution, packaging." In the drug trade, he explained, "[d]epending on what the drug was, it would be measured or weighed and put inside the small, zip lock baggie to more easily distribute it." The Commonwealth offered a photograph of the baggies as Exhibit 1 and the actual baggies as Exhibit 2. Thomas renewed his objection each time, and the trial court overruled it.

Thomas took the stand in his own defense. Thomas admitted that, in the past, he "distributed" marijuana and had been convicted of possession of marijuana with intent to distribute. With respect to the 46 plastic baggies, Thomas claimed his "mom uses them to put jewelry in." Beyond that, Thomas said, he did not know of any other use for the baggies, nor did he know how they ended up in a hidden compartment of the driver's side door of his car.

At the end of the trial, the trial judge asked Thomas's counsel about the cautionary instruction previously offered. "I decided I don't think we need a cautionary instruction," counsel replied, "I think it might do more harm than good." The trial court gave the final instructions to the jury omitting, as requested, any cautionary instruction concerning the evidence of the 46 plastic baggies or Officer DeCoster's testimony about them. The jury convicted Thomas of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.

## II.

On appeal, Thomas challenges his conviction on four grounds. First, he contends that the trial court erred by "admitting evidence of marijuana seeds and zip lock bags." Second, he contends the court erred by failing to *sua sponte* intervene to cut off the prosecutor's argument seeking to connect the drug-related evidence to the firearm. Third, Thomas asserts the court erred by "permitting the jury" to rely upon the drug-related evidence in support of the firearm charge. Thomas's final contention asserts the court erred by not giving a cautionary instruction.

### A. WAIVER OF ALL BUT ONE ISSUE ON APPEAL

As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it. See, e.g., Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571 (2004) (holding that appellant waived challenge to double-tier hearsay by failing to specifically object to trial court's incomplete ruling as to only one of the two tiers).[1]

---

[1] See also West Alex. Props., Inc. v. First Va. Mort., 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."); Widdifield v. Commonwealth, 43 Va. App. 559, 563, 600 S.E.2d 159, 161 (2004) (*en banc*) (holding that only a "specific" objection or argument at trial preserves appellate review); Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004) (holding that the "same argument must have been raised, with specificity"); Edwards v. Commonwealth,

In this case, Rule 5A:18 bars all but one of Thomas's contentions on appeal. His first argument — that the trial court erroneously admitted evidence of marijuana seeds and 46 plastic baggies — must be severed, as Thomas objected to the introduction of the baggies, but not to the seeds. The objection also did not address the testimony about the marijuana residue "throughout the entire vehicle" or the odor of marijuana permeating the vehicle.

Thomas likewise failed to object to the prosecutor's closing argument asserting a logical link between the firearm in Thomas's vehicle and the various indicia of drug distribution associated both with Thomas and his vehicle (*i.e.*, Thomas's admission of having "distributed" drugs in the past; his prior possession-with-intent-to-distribute marijuana conviction; the marijuana odor coming from his vehicle; the presence of marijuana residue throughout the entire vehicle; and the 46 baggies hidden in a secret door compartment).[2]

Finally, by refusing the trial court's offer of a cautionary instruction and by not proposing one of his own, Thomas waived any claim of error associated with that issue. See Lewis v. Commonwealth, 43 Va. App. 126, 130 n.1, 596 S.E.2d 542, 544 n.1 (2004) ("Appellant may have been entitled to a cautionary instruction. However, we do not address this aspect of the question presented because appellant never requested a cautionary instruction at trial.").

Rule 5A:18 is not absolute, however. If the ends of justice warrant an exception to the general rule, we may set it aside. We do so, however, only in "extraordinary situations" where

---

41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) ("A general argument or an abstract reference to the law is not sufficient to preserve an issue.").

[2] When contesting a prosecutor's allegedly improper argument, a "timely motion for a mistrial or a cautionary instruction is required to preserve the issue for appeal even if an objection was properly made to the conduct or comments and improperly overruled by the trial judge." Morris v. Commonwealth, 14 Va. App. 283, 287, 416 S.E.2d 462, 464 (1992) (*en banc*); see also Schmitt v. Commonwealth, 262 Va. 127, 148, 547 S.E.2d 186, 200-01 (2001). "There appears to be no exception in Virginia law to the strict application of this rule." Bennett v. Commonwealth, 29 Va. App. 261, 281, 511 S.E.2d 439, 449 (1999).

the defendant can prove a substantial miscarriage of justice.  Bazemore v. Commonwealth, 42 Va. App. 203, 218-19, 590 S.E.2d 602, 609-10 (2004) (*en banc*) (citations omitted).  "The record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'"  Copeland v. Commonwealth, 42 Va. App. 424, 442, 592 S.E.2d 391, 399 (2004) (citations omitted); see also Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000) (observing that defendant must show "she was convicted for conduct that was not a criminal offense" or "an element of the offense did not occur").

Thomas argues that the ends-of-justice exception applies to his assertion on appeal that the trial court erred by not giving a cautionary instruction.  On that issue, we discern no reason to suspend the procedural default of Rule 5A:18.  Experienced trial lawyers know that cautionary instructions, even when perfectly worded, sometimes highlight problematic evidence and, thus, as Thomas's counsel concluded in this case, "do more harm than good."  For this reason, "counsel may wish to avoid such an instruction for sound tactical reasons."  Commercial Distribs., Inc. v. Blankenship, 240 Va. 382, 394, 397 S.E.2d 840, 847 (1990) (citation omitted).  To compel a trial judge to give a cautionary instruction — in the face of defense counsel's express request that he not do so — would compromise the court's objectivity and interfere with the prerogative of trial counsel to the detriment of the adversarial system.  The ends-of-justice exception, therefore, cannot be invoked under these circumstances.

B.      ADMISSIBILITY OF THE 46 PLASTIC BAGGIES AND OFFICER DECOSTER'S TESTIMONY ABOUT THEIR USE IN THE DRUG TRADE

Thomas objected to the evidence of the 46 plastic baggies found in the hidden compartment of his vehicle and Officer DeCoster's expert testimony that they were "indicative of illegal narcotics distribution, packaging."  The trial court overruled the objection, finding the evidence relevant to provide a hypothesis for why Thomas would possess a loaded handgun also hidden in the same vehicle.  On appeal, Thomas (i) objects to the logical relevance of the

- 6 -

drug-related evidence, (ii) claims it violates the prior-bad-acts and other-crimes doctrines, and (iii) contends it was unduly prejudicial in any event. We disagree with each of these assertions.

(i) *Logical Relevance Of Drug-Related Evidence*

Two threshold principles govern appellate review of evidentiary decisions. First, we do not review such decisions *de novo*. "Given the 'broad discretion' of a trial judge over evidentiary matters, we apply a deferential abuse-of-discretion standard of appellate review." Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004) (citation omitted). This standard, if nothing else, means that the trial judge's "ruling will not be reversed simply because an appellate court disagrees." Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 754 (1982). Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.

Second, every fact, "however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260, 520 S.E.2d 164, 179 (1999) (citation omitted).[3] "Put another way, evidence has relevance if it 'tends to cast any light' on any material point." Seaton, 42 Va. App. at 752, 595 S.E.2d at 15 (quoting Ricks v. Commonwealth, 39 Va. App. 330, 334, 573 S.E.2d 266, 268 (2002)). It is its *tendency* to prove or disprove — not its sufficiency, standing alone, to satisfy the ultimate burden of proof — that makes a fact relevant:

---

[3] See also Winston v. Commonwealth, 268 Va. 564, 596, 604 S.E.2d 21, 39 (2004) ("For a piece of evidence to be relevant, it must have a 'logical tendency, however slight, to prove a fact at issue in the case.'" (citation omitted)); Barkley v. Wallace, 267 Va. 369, 373, 595 S.E.2d 271, 273 (2004) ("Every fact that tends to establish the probability or improbability of a fact at issue is relevant."); Velocity Express Mid-Atlantic v. Hugen, 266 Va. 188, 205, 585 S.E.2d 557, 566-67 (2003) ("[E]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant." (citations and internal quotation marks omitted)); Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 56, 419 S.E.2d 627, 630 (1992) ("Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." (quoting Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987))).

It is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

McKoy v. North Carolina, 494 U.S. 433, 440 (1990) (citations and internal brackets omitted).[4]

This standard entrusts juries with the task of weighing evidence of all probative gradations and gives them the freedom to accept or reject what they will. "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill." Curtis v. Commonwealth, 11 Va. App. 28, 33, 396 S.E.2d 386, 389 (1990) (quoting Manson v. Brathwaite, 432 U.S. 98, 116 (1977)).

Guided by these principles, we hold the trial court did not abuse its discretion in admitting into evidence the 46 plastic baggies or Officer DeCoster's expert testimony about their use in the illegal drug trade. Thomas had been previously convicted for possessing marijuana with intent to distribute. He admitted to distributing drugs in the past. At the time of his arrest, marijuana residue was found "throughout the entire vehicle" owned and operated by Thomas. The odor of marijuana coming from the vehicle was immediately apparent. The 46 plastic baggies, commonly used in the drug trade for distribution purposes, were hidden in a secret compartment of the driver's side door. Suffice it to say, the jury was entitled to find it unlikely

---

[4] "It is often necessary for the trier of fact to determine the existence of an element of the crime — that is, an 'ultimate' or 'elemental' fact — from the existence of one or more 'evidentiary' or 'basic' facts." Ulster County Court v. Allen, 442 U.S. 140, 156 (1979) (citations omitted). An evidentiary or basic fact need be proven beyond a reasonable doubt only when it is the sole evidence supporting an element of the crime. Morton v. Commonwealth, 13 Va. App. 6, 10, 408 S.E.2d 583, 585 (1991). "If, however, other evidence also tends to prove the element of the crime required to be proven, the probative weight of the inferred fact need be no greater than that required of any other evidence admitted for consideration by the trier of fact, so long as all of the evidence proves the element beyond a reasonable doubt." Id.; see also McQuinn v. Commonwealth, 19 Va. App. 418, 424, 451 S.E.2d 704, 707 (1994).

that Thomas's mother stored her supply of empty jewelry bags in a hidden compartment of Thomas's marijuana-infested car.[5]

Both individually and collectively, these facts *tended* to show just what the prosecutor argued — that Thomas was still engaged in the distribution of marijuana. A logical basis exists for making this point in a case involving weapons. Many courts have acknowledged the commonsense "relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons." Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (*en banc*); Christian v. Commonwealth, 33 Va. App. 704, 714 n.5, 536 S.E.2d 477, 482 n.5 (2000) (*en banc*). Guns are the "tools of the trade" in the underground drug world. United States v. White, 875 F.2d 427, 433 (4th Cir. 1989).

While not alone dispositive, evidence linking a defendant to drug distribution may be considered as one factor in determining whether he may have had a motive to possess a firearm. See Logan, 19 Va. App. at 445, 452 S.E.2d at 369. On the question of motive, "drug-related evidence" has a rational bearing of a charge of "firearm possession" because of the commonly accepted correlation between the two. United States v. White, 356 F.3d 865, 870 (8th Cir. 2004).[6] The trial court, therefore, did not abuse its discretion in admitting into evidence the 46

_____

[5] A factfinder may disbelieve a defendant's "self-serving explanation as a mere effort at 'lying to conceal his guilt.'" Haskins v. Commonwealth, 43 Va. App. 1, 10, 602 S.E.2d 402, 406 (2004); see also Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004).

[6] See also United States v. White, 356 F.3d 865, 870 (8th Cir. 2004) ("The fact that drugs were found in White's possession bears some relevance to the issue of whether White was in possession of a firearm."); United States v. Reyes, 353 F.3d 148, 154 (2d Cir. 2003) ("[F]irearms and sharp objects, such as razor blades and hypodermic needles, are 'tools of the [drug] trade' regularly found on narcotics traffickers."); United States v. Butcher, 926 F.2d 811, 816 (9th Cir. 1991) ("Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work." (citation omitted)); United States v. Cresta, 825 F.2d 538, 554 (1st Cir. 1987) ("Because the weapons tend to prove the defendants' intent to promote and protect the narcotics conspiracy, they are relevant and admissible."); United States v. Marino, 658 F.2d 1120, 1123 (6th Cir. 1981) ("Because the guns tend to prove Orlando's intent to promote and protect the narcotics conspiracy, the evidence of the firearms is relevant and admissible under

plastic baggies or Officer DeCoster's expert testimony about their use in the drug trade.  What weight, if any, these facts should have been given when placed in the context of all of the other evidence in the case is a question for the jury, not the court, to decide.

(ii)  *Prior-Bad-Acts and Other-Crimes Doctrines*

We also disagree with Thomas that the admission of this evidence conflicts with the prior-bad-acts doctrine (he has done it before, thus, he did it this time) or the other-crimes principle (he committed one crime, thus, he committed another).  Both are applications of the same rule prohibiting the use of propensity evidence in criminal prosecutions.  In this context, drug-related evidence does not attempt to prove mere propensity — it instead addresses a possible "motive" for the defendant to possess a firearm.  United States v. Smith, 292 F.3d 90, 98 (1st Cir. 2002) (finding evidence of drug-related activity "easily clears the relevancy hurdle" by providing "a compelling motive for possessing the gun"); United States v. Thomas, 242 F.3d 1028, 1033 (11th Cir. 2001) (admitting drug-related evidence "to prove knowing possession of the firearm, not character"); United States v. Fuller, 887 F.2d 144, 147 (8th Cir. 1989) (holding admission of "drug paraphernalia" evidence relevant to motive to possess a firearm).

In other words, Thomas's possession of the drug baggies was neither a prior bad act nor a simultaneous, but unrelated, crime.  It was just a factual circumstance of the crime scene.[7]  "The policies underlying the rule are simply inapplicable when some offenses committed in a single

---

Rule 401."); United States v. Wiener, 534 F.2d 15, 18 (2d Cir. 1976) ("[D]ealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.").

[7] As the Virginia Supreme Court has explained:  "Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial.  The fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses."  Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984).

criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." United States v. Butcher, 926 F.2d 811, 816 (9th Cir. 1991) (citation omitted) (holding that a "rational trier of fact could infer from the presence of the scales, plastic bags, and the pay and owe sheets" that the defendant possessed the nearby firearm); United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1985) (propensity evidentiary rules do not preclude "admitting the drug-related evidence" at a trial involving a "firearms charge").[8]

(ii) *Balancing Potential Prejudicial and Probative Qualities*

For similar reasons, we are unpersuaded by Thomas's argument that the evidence of the hidden drug baggies should have been excluded as unduly prejudicial. In a sense, all "evidence tending to prove guilt is prejudicial" — at least from the point of view of the person standing trial. Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004). Virginia law, however, intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences. And even then, it becomes a matter of degree. "Relevant evidence may be excluded only if the prejudicial effect of the evidence outweighs its probative value." Goins v. Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996): see also Winston v. Commonwealth, 268 Va. 564, 597, 604 S.E.2d 21, 39-40 (2004) (holding that evidence can be excluded only when its "probative value is outweighed by its prejudicial effect"). We generally defer to trial judges on this subject because they, unlike us, participate first person in the evidentiary process and acquire competencies on the subject that we can rarely duplicate merely

---

[8] We find these authorities consistent with settled Virginia law, which follows an "inclusionary approach" to the uncharged misconduct doctrine by admitting such evidence "if relevant, for any purpose *other than* to show a mere propensity or disposition on the part of the defendant to commit the crime." Kent Sinclair, Joseph C. Kearfott, Paul F. Sheridan, & Edward J. Imwinkelried, Virginia Evidentiary Foundations § 6.4[A], at 165 (1998) (emphasis in original). While not an "element of any crime," motive is a "circumstance tending to prove the guilt" of the accused. Cantrell v. Commonwealth, 229 Va. 387, 397, 329 S.E.2d 22, 28 (1985). It has never been treated by Virginia law as a synonym for mere propensity or predisposition evidence.

by reading briefs and transcripts. See generally Dandridge v. Marshall, 267 Va. 591, 596, 594 S.E.2d 578, 581 (2004) (recognizing this decision "rests within the sound discretion" of the trial judge).

In this case, the prosecutor's theory of the case suggested Thomas was still engaged in marijuana distribution and possessed the firearm in support of that endeavor. This assertion, however, did not rely solely on the evidence of the hidden drug baggies. The prosecutor also stressed to the jury the evidence of Thomas's prior conviction for possessing marijuana with the intent to distribute, Thomas's concession on the stand that he had distributed marijuana in the past, the presence of marijuana residue throughout the entire vehicle, and the odor of marijuana coming from the interior compartment of the vehicle.[9] Thomas did not object to any of this evidence or the prosecutor's closing arguments.

It is in this context that the trial judge had to determine whether the incrementally greater prejudice allegedly added by the evidence of the drug baggies was of sufficient magnitude to warrant their outright exclusion. On balance, he held, it was not. In an exercise of commendable caution, the trial judge *sua sponte* offered to give a cautionary instruction. Thomas declined it. Concurring with the views of other appellate courts, we find no abuse of discretion under these circumstances.[10]

---

[9] Asserting these same facts, the Commonwealth argues that, even if the trial court erred in admitting the baggies, the error would be harmless under the facts of this case — particularly given Thomas's admission that he knew the officers had found the hidden firearm as soon as they drew their weapons. See generally Clay v. Commonwealth, 262 Va. 253, 259-60, 546 S.E.2d 728, 731-32 (2001) (adopting federal non-constitutional standard for determining harmless error). Given our holding, we need not address the question of harmless error.

[10] See, e.g., White, 356 F.3d at 870 (holding that "potential unfairness" of drug-related evidence was "outweighed by its probative value" proving firearm possession); Thomas, 242 F.3d at 1033 (finding probative value of drug-related evidence in firearm possession case outweighed potential prejudice); Simon, 767 F.2d at 527 (finding evidence of drug packaging was "of great probative value" in proving possession of firearm and was not unduly prejudicial).

III.

In sum, we hold that Thomas waived all but one of his appellate arguments by failing to make specific and timely objections at trial. On the issue he preserved for appeal, we hold that the trial court did not abuse its discretion in admitting the contested evidence. For these reasons, we affirm Thomas's conviction.

<u>Affirmed</u>.

Benton, J., dissenting.

Thomas was at trial on an indictment charging he "knowingly and intentionally possess[ed] a firearm after having been previously convicted of a felony." Thomas was not being tried for a narcotics offense. Yet, the trial judge permitted evidence to prove Thomas had the propensity to engage in an uncharged offense of drug distribution.

At trial, Thomas properly preserved the issue for appeal that the prior bad act evidence was inadmissible to show he had the propensity to commit the crime for possession of a firearm. He also properly preserved the issue of whether such evidence should not have been admitted because it was overly prejudicial, and lacked probative value. Objecting to the testimony about the small plastic baggies and the introduction of them in evidence, Thomas's trial attorney said "I don't think this is relevant." During the discussion about the objection, the prosecutor indicated that he intended to argue that "when you find drugs its a reasonable inference that somebody can be armed and dangerous." Thomas's attorney argued "the probative value does not outweigh the prejudice because [it is] immensely prejudicial for the jury to hear . . . there were all these bags . . . in the car." The trial judge admitted the evidence, "find[ing] that the probative value does outweigh the prejudice." Thomas argues on appeal as he did at trial: that the evidence was "irrelevant" and lacked "probative value" and that "the prejudice . . . greatly outweighed any tenuous probative value." I would hold that the objection was well stated and that the trial judge erred by admitting the evidence.

This evidence plainly was inadmissible.

> It is well established in our jurisprudence that evidence of other offenses is generally not admissible to prove guilt of the crime for which a defendant is presently on trial. See Stockton v. Commonwealth, 227 Va. 124, 142, 314 S.E.2d 371, 383 (1984); Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981); Eccles v. Commonwealth, 214 Va. 20, 22, 197 S.E.2d 332, 333 (1973). This is so because "[s]uch evidence implicating an accused in other crimes unrelated to the charged offense . . . may

- 14 -

> confuse the issues being tried and cause undue prejudice to the defendant." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998).

Commonwealth v. Minor, 267 Va. 166, 171-72, 591 S.E.2d 61, 65 (2004). Accord Fleenor v. Commonwealth, 200 Va. 270, 274-75, 105 S.E.2d 160, 163 (1958) (holding that "such evidence confuses the issue before the jury, unfairly surprises the accused with a charge he is not prepared to meet, and tends to prejudice him in the minds of the jury by showing his depravity or criminal propensity").

The rationale behind the rule is that evidence is inadmissible which tends to prove only that the accused "has a propensity to commit bad acts . . . and, therefore, he probably committed the bad act with which he stands charged." Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 233 aff'd on rehearing en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993). Even if it is alleged that the evidence is admissible as an exception to the rule, "the legitimate probative value of the evidence must outweigh its prejudicial effect." Id.; see Guill, 255 Va. at 139, 495 S.E.2d at 491-92. Thus, even if we assume the inference the prosecutor desired is a rational one, the evidence must be excluded when the jury might give the evidence prejudicial weight.

This is such a case. The only evidentiary value of the empty baggies was to suggest an inference that Thomas had the propensity to distribute narcotics. On this inference, the prosecutor pyramided further inferences that Thomas must have known the gun was in the car because the jury could assume that drug distributors possess guns. The trial judge's admission of evidence that empty baggies were found in the car was error because this evidence allowed a speculative inference Thomas had committed or intended to commit another crime, which had no connection to the offense for which he was being tried. "The accused comes to trial to meet the specific charge against him, not to vindicate or to explain every collateral charge that may be

- 15 -

made in the course of the introduction of the evidence." Limbaugh v. Commonwealth, 149 Va. 383, 391, 140 S.E. 133, 135 (1927).

Simply put, the prosecutor sought to lead the jury to draw "the inference that because of a criminal propensity [Thomas] probably committed the crime for which he was being tried." Fleenor, 200 Va. at 275, 105 S.E.2d at 163. This type of speculative inference drawing has long been condemned.

> It is well settled in this State, and elsewhere, that evidence which tends to show that an accused has committed another crime independent of, and unconnected with, that for which he is on trial is inadmissible. This is upon the principle that such evidence confuses the issue before the jury, unfairly surprises the accused with a charge he is not prepared to meet, and tends to prejudice him in the minds of the jury by showing his depravity or criminal propensity.

Id. at 274-75, 105 S.E.2d at 163.

Prior bad acts evidence is admissible for limited purposes, for example to show identity, intent, or motive. Sutphin v. Commonwealth, 1 Va. App. 241, 245-46, 337 S.E.2d 897, 899 (1985) (citing permissible uses). Even if such evidence is admissible as an exception to the rule (and in this case, it was not - calling it "motive" instead of "propensity" is a rose by any other name), "the legitimate probative value of the evidence must outweigh its prejudicial effect." Wilson, 16 Va. App. at 220, 429 S.E.2d at 233; see Guill, 225 Va. at 139, 495 S.E.2d at 491. Indeed, we have ruled that "in a prosecution for possessing drugs with the intent to distribute, the fact that an accused has sold drugs on a prior occasion, where the prior sale is not shown to have been related to the charged offense, has great potential for prejudice." Jones v. Commonwealth, 18 Va. App. 329, 332, 443 S.E.2d 820, 821 (1994). This is so because "[e]vidence of unrelated drug sales suggests to the jury that the accused has a propensity to commit a crime of this nature." Id. "[B]oth this Court and the Virginia Supreme Court have repeatedly rejected the admission of evidence of separate and unrelated prior drug transactions to show a defendant's

- 16 -

sale of drugs or possession of drugs with the intent to distribute." Cooper v. Commonwealth, 31

Va. App. 643, 648, 525 S.E.2d 72, 74 (2000).  See Donahue v. Commonwealth, 225 Va. 145,

154-56, 300 S.E.2d 768, 773-74 (1983); Eccles v. Commonwealth, 214 Va. 20, 21-22, 197

S.E.2d 332, 332-33 (1973); Boyd v. Commonwealth, 213 Va. 52, 52-53, 189 S.E.2d 359, 359-60

(1972); Hill v. Commonwealth, 17 Va. App. 480, 485-87, 438 S.E.2d 296, 299-300 (1993);

Wilson, 16 Va. App. at 219-23, 429 S.E.2d at 233-35.  If a prior conviction for possession with

intent to distribute narcotics would be inadmissible to prove knowledge of or intent to possess

the gun or the baggies, then certainly the evidence of the empty baggies and the inferences the

prosecutor sought to draw from them were inadmissible here, where the speculation required to

make any conclusion is far greater.

Beyond prejudice, this evidence should have been excluded because of its dubious

probative value in establishing the charge of possession of a firearm.  As the Supreme Court

noted in Guill,

> "if the circumstances [of the other event] have no intimate
> conne[ct]ion with the main fact; if they constitute no link in the
> chain of evidence . . . they ought to be excluded, because they are
> irrelevant; [and] if they denote other guilt, they are not only
> irrelevant, but they do injury, because they have a tendency to
> [cause] prejudice."

255 Va. at 139, 495 S.E.2d at 491 (quoting Walker v. Commonwealth, 28 Va. (1 Leigh) 574, 577

(1829)).

There was no such "intimate connection" here.  The evidence that empty baggies were

found in the car merely allowed the jury to draw a speculative inference that Thomas had

committed or intended to commit another crime, which had no connection to the offense for

which he was being tried.  Moreover, no evidence at trial proved that any of the baggies

contained marijuana or any other controlled substance.  Here, the prosecutor offered the empty

baggies as evidence and then sought to use the discovery of the baggies in the car to support a

chain of impermissible inferences involving Thomas's previous conviction of drug distribution. It offered the evidence as a basis to argue to the jury the following: First, it could infer these baggies were items connected with a trade in narcotics. Second, it could infer from Thomas's previous conviction for possession of narcotics that he possessed the baggies as an incident of his trade as a drug dealer. Third, it could speculate that drug dealers carry guns as an incident of the drug trade. Lastly, it could infer from Thomas's possession of items of the drug trade that Thomas was engaged in the distribution of drugs and, therefore, knowingly possessed the gun. Allowing such a long chain of speculation, far removed from the facts, is not probative evidence.

For these reasons, I would hold that the judge erred in admitting in evidence the empty baggies. Therefore, I dissent.