COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia


JEFFREY PAUL RIDDEL

                                                          MEMORANDUM OPINION* BY
v.        Record No. 0647-19-4                     JUDGE CLIFFORD L. ATHEY, JR.
                                                               MARCH 3, 2020
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                               Grace Burke Carroll, Judge

            Corinne J. Magee (The Magee Law Firm, on brief), for appellant.

            Mason D. Williams, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Jeffrey Paul Riddel ("Riddel") appeals the decision of the Circuit Court for the County of

Fairfax ("trial court") denying his motion to strike the evidence and his subsequent conviction

for practicing a profession or occupation without holding a valid license required by a regulatory

board, in violation of Code § 54.1-111.  Contending that "[t]he trial court erred in overruling

[Riddel's] motion . . . when there was no evidence that [Riddel] performed any of the services,

and the company that did perform the services was not licensed," Riddel presents statutes and

argument to this Court that are substantively different than the arguments he made during his

motion to strike.  Accordingly, we find that Riddel's appeal is barred pursuant to Rule 5A:18,

and we affirm the trial court's judgment.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND[1]

In the summer of 2017, Donald and Kelly Carpenter ("the Carpenters") began the process of selling their home,[2] which included scheduling an inspection of their home septic system.  The Carpenters directed their real estate agent, Marc Bertinelli ("Bertinelli"), to contract with Riddel to perform an inspection and, if necessary, repairs to their septic system.

Riddel met with Bertinelli twice and represented that he inspected and repaired septic systems by trade.  Riddel's representations led the Carpenters and Bertinelli to believe that Riddel was a "septic inspector [and] repair person" who owned a company doing business as Fairfax Suburban Septic.

On June 14, 2017, Bertinelli observed Riddel's inspection of the septic system.  Following his inspection, Riddel recommended several repairs to Bertinelli.  Acting as agent for the Carpenters, Bertinelli verbally agreed for Riddel to perform the repairs that Riddel said were needed for the Carpenters to sell the home; specifically, Riddel told Bertinelli that "the work would be taken care of" in exchange for an estimated cost of $2,500.  Riddel's actions and representations led Bertinelli to believe that Riddel and his associates would be performing the repairs.

The day after Riddel's subcontractor pumped the septic system, Riddel spoke with the Carpenters regarding the repairs that still needed to be performed on their septic system.  Three days after that work was performed, a house sitter alerted the Carpenters that the alarm on their septic system was sounding.  The Carpenters then spoke with Riddel over the phone, and he provided instructions regarding how to proceed and recommended additional repairs.  Riddel

---

[1] Pursuant to familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial.  Gerald v. Commonwealth, 295 Va. 469, 472 (2018).

[2] Their home was located on Blackberry Lane, within the County of Fairfax.

opined that the septic alarm sounded due to an issue with the floaters, which he believed "had floated to the bottom of the tank." An associate of Riddel's performed the additional repairs.

Riddel personally delivered the final bill to Bertinelli, which represented that $2,620 in repairs had been performed. After delivering the bill, Riddel instructed Bertinelli that the Carpenters should pay the $2,620 to Fairfax Suburban Septic. Bertinelli collected a check from the Carpenters for $2,620 made payable to Fairfax Suburban Septic, which he then delivered to Riddel's associate at Fairfax Suburban Septic.

The Carpenters subsequently discovered that neither Riddel nor his associates had fully repaired the septic system. As a result, Bertinelli submitted a written refund request to Riddel on behalf of the Carpenters; Riddel, however, never refunded the money.

Kelley Tyler ("Tyler"), an investigator with the Virginia Department of Professional Occupation Regulation ("DPOR"), determined that neither Riddel nor Fairfax Suburban Septic held any licenses for contracting in Virginia as of June 14, 2017, the date Riddel made the agreement with the Carpenters.[3] As a result, Tyler investigated Riddel for performing services requiring a "Class C" contractor's license without having obtained the license. Riddel admitted to Tyler that he did not hold a license to perform septic repairs. Furthermore, Riddel did not deny contracting to perform the repairs on the Carpenters' septic system. Riddel explained that he was "just trying to make a dollar" and "taking over his brother's business." Finally, Riddel did not deny that he had received payment from the Carpenters in exchange for performing those repairs.

After presenting testimony from the Carpenters, Bertinelli, and Tyler, the Commonwealth rested its case. Riddel moved to strike the Commonwealth's evidence, arguing that he had not

_____

[3] Tyler's search of an electronic database produced a transcript that showed the license status for the ten years preceding the date of the search, June 18, 2018; neither Riddel nor Fairfax Suburban Septic had been licensed during those ten years.

violated Code § 54.1-111 because (1) he merely arranged for licensed contractors to perform the repairs to the septic system, and, therefore, (2) no written contract to perform a septic system inspection or repairs existed. Regarding the first point, counsel argued, "there's been no evidence that [Riddel was] doing work that requires a license. He [wa]s making arrangements to have these jobs done." Regarding the second point, counsel argued, "[t]he best evidence you have of a contract is a receipt."

The Commonwealth responded that Riddel met the definition of a "Class C" contractor and was therefore required to have a license to contract to repair a septic system under Code §§ 54.1-111 and 54.1-1100 when Riddel provided an estimate and entered into an agreement to perform the repairs in exchange for $2,620, an amount that required a "Class C" license. The trial court denied Riddel's motion to strike.

Riddel elected not to put on evidence and renewed his motion to strike, arguing that Code §§ 54.2-801 to -802[4] permitted him to arrange the work without a contractor's license. The trial court rejected Riddel's argument, holding that a "Class C" contractor's license was, in fact, required. Accordingly, the trial court also denied Riddel's renewed motion to strike.

Following closing arguments, the trial court convicted Riddel of practicing a profession or occupation without holding a valid license required by a regulatory board, in violation of Code § 54.1-111. The trial court sentenced Riddel to serve twelve (12) months in jail but only imposed sixty (60) days of the sentence conditioned upon Riddel's good behavior and refraining from similar conduct. This appeal followed. Riddel conceded to this Court during oral argument that he failed to present on appeal the argument he made in the trial court.

---

[4] These statutes were incorrectly cited in the trial court and only serve to illustrate that Riddel relied on a different argument at trial than the argument proffered on appeal.

## II. ANALYSIS

Riddel argues for the first time on appeal that Code §§ 32.1-163, 54.1-2302, and 54.1-2300, read together, did not require him to hold a valid license. The Commonwealth responds that Riddel did not make this argument in the trial court and, accordingly, Riddel should not be permitted to make this argument for the first time on appeal. We agree with the Commonwealth. Because Riddel failed to make this substantively distinct argument, Rule 5A:18 bars him from making this argument for the first time on appeal.

Rule 5A:18 states, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

Because of specificity and timeliness requirements for objections, we have emphasized that "[n]ot just any objection will do." Hicks v. Commonwealth, 71 Va. App. 255, 266 (2019) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 750, adopted upon reh'g en banc, 45 Va. App. 811 (2005)). "[T]he trial judge . . . [must] kno[w] the particular point being made in time to do something about it," which prevents unnecessary appeals by allowing the trial court to resolve the specific objection "either because the trial court intervenes with a corrective ruling that accommodates the asserted interests of both sides or because opposing counsel gives a winning explanation that moots the objection altogether." Bethea v. Commonwealth, 297 Va. 730, 744 (2019) (quoting Dickerson v. Commonwealth, 58 Va. App. 351, 356 (2011)); Creamer v. Commonwealth, 64 Va. App. 185, 195 (2015) ("The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials.").

Although Rule 5A:18 does not require "cit[ation to] specific authority, such as a particular statute or constitutional provision, to the trial court in order to rely on it on appeal," a party "must present the objection itself with sufficient particularity to permit the judge . . . to take necessary action." Hicks, 71 Va. App. at 266; see also Byrd v. Commonwealth, 50 Va. App. 542, 549 (2007) (interpreting Rule 5A:18 as requiring cited authorities to support "a position otherwise adequately presented at trial"). Thus, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." Hicks, 71 Va. App. at 266 (quoting Johnson v. Commonwealth, 58 Va. App. 625, 637 (2011)). At trial, Riddel focused his motion to strike on whether the evidence would support a conviction under Code § 54.1-111 when Riddel contended that he had merely arranged the work and no written contract existed.

In support of Riddel's motion to strike, his counsel argued that "there's been no evidence that [Riddel was] doing work that requires a license. He [wa]s making arrangements to have these jobs done." Riddel's counsel relied exclusively on Code § 54.1-111 in support of his argument that Riddel performed no actions that required a contracting license because he merely made the bid and arrangements for the work. He also asserted that no contract was ever formed, stating that "[t]he best evidence you have of a contract is a receipt." The Commonwealth argued that Riddel's actions required a "Class C" contractor's license under Code §§ 54.1-111 and 54.1-1100 because Riddel provided an estimate and entered into an agreement with the Carpenters to perform the repairs in exchange for $2,620, an amount that required a "Class C" license. The trial court relied upon these specific arguments referring to specific statutory provisions in denying Riddel's motion to strike.

Renewing his motion to strike, Riddel then argued that Code §§ "54.2-801 to -802" permitted him to arrange the work without a contractor's license. The trial court rejected

Riddel's argument, holding that a "Class C" contractor's license was, in fact, required.

Accordingly, the trial court also denied Riddel's renewed motion to strike.

Riddel now cites, for the first time on appeal, Code §§ 32.1-163, 54.1-2302, and 54.1-2300 in support of his assignment of error. These substantively distinct provisions govern unlicensed waterworks or wastewater works operators. Because Riddel failed to present this new argument to the trial court first, he denied the trial judge the opportunity to rule on the matter now briefed and argued before this Court on appeal. Rule 5A:18 bars this Court from considering this newly alleged error, never considered by the trial court, on appeal.[5]

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>

---

[5] Riddel neither sought the good-cause nor ends-of-justice exceptions to Rule 5A:18. <u>See, e.g.</u>, <u>Hicks</u>, 71 Va. App. at 269 n.6 (refusing to consider these exceptions *sua sponte*).