COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Malveaux and Causey
Argued at Norfolk, Virginia

UNPUBLISHED

WILLIE FLOYD, JR.

MEMORANDUM OPINION* BY
v.      Record No. 0476-23-1          JUDGE RICHARD Y. ATLEE, JR.
                                      MAY 21, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III,[1] Judge

G. Anthony Yancey (Steven A. Mirman; Law Offices of G. Anthony
Yancey; Mirman Law Firm, P.L.L.C., on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Norfolk convicted Willie Floyd, Jr., of

first-degree murder and use of a firearm in the commission of murder. Floyd alleges that the trial

court erred in admitting evidence of his prior physical abuse of a former girlfriend. He also

contends that the evidence was insufficient to prove the murder was premeditated. For the

following reasons, we affirm the judgment.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Doyle sentenced Floyd. Judge Joseph A. Migliozzi, Jr., presided over the jury
trial.

standard requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

Floyd's convictions stem from the murder of Thomas Ellis. On the night of October 23, 2017, Ellis attended a gathering at an apartment complex in Norfolk. Shamblis Evans, D.E.,[2] and Takelia Evans also attended the gathering. Shamblis and Ellis had dated previously, and they were in the process of reconciling at the time of the incident. D.E. is Shamblis's and Ellis's daughter, while Takelia is Shamblis's sister. Floyd, who was Shamblis's ex-boyfriend, was not present at the gathering.

While Shamblis and D.E. lived on the fourth floor of the apartment building, the gathering was at Shamblis's mother's apartment on the second floor of the building. At the end of the gathering, Shamblis went upstairs to her apartment, while Takelia and D.E. walked with Ellis down to the parking lot. Floyd was standing in the open stairwell on the fourth floor, near Shamblis's apartment. He "said something smart" to Ellis, who turned around and looked up at him. Takelia was surprised to see Floyd there. She told Ellis not to say anything, and they kept walking. At some point, Takelia sent D.E. back upstairs. When Takelia got in her car and drove away, Ellis was still in the parking lot.

D.E. testified that as she returned to her apartment from walking Ellis to his car, she saw Floyd walking down the stairs from the fourth-floor balcony. D.E. entered her apartment and went to her bedroom window to watch Ellis leave. She saw him get in his car and then went into the hallway to talk to Shamblis; that is when she heard gunshots.

---

[2] We refer to the minor child, D.E., by her initials to protect her privacy.

The police, responding to multiple 911 calls about the shooting, arrived at the apartment complex. Officers observed broken glass in the parking lot and shell casings at the bottom of the staircase. The distance between the shell casings and the broken glass was about 40 feet. Later testing showed the shell casings came from the same gun. The officers also canvassed for witnesses.

One of those witnesses was Nathaniel Moody, who lived on the first floor. He was in his bedroom, working at his computer, when he saw headlights shining into his window from the parking lot. Moody looked out his window and saw Floyd, whom he knew as "Pac Man," walk to a car and retrieve an item from the driver side. Floyd then closed the door of the car and "went out of [Moody's] line of vision" in the direction of the front hallway, near the stairs. A few moments later, Moody heard gunshots. Looking out his window, Moody saw Floyd shooting into a car that was parked in front of the building. That car drove out of the parking lot, and Moody watched Floyd get in his car and follow the other car. Moody picked Floyd out of a photo lineup and later identified him in court as the man he knew as "Pac Man."

Ellis was the driver of the other car, and he suffered multiple gunshot wounds. Despite these injuries, he drove himself to the hospital after leaving the parking lot. Ellis underwent several surgeries, but he ultimately died of his injuries on November 3, 2017.

During Floyd's trial, Shamblis testified that she had dated Floyd, but by the summer of 2017, the relationship had ended. She described their relationship as good at first, but it became "a mess." She said that Floyd had become "crazy." Over Floyd's objection, Shamblis described how Floyd "would talk trash" and "just do all types of stuff," like kick her door in, try to "run [her] down" if he saw her outside, and appear at her place of employment if she did not return his phone calls. Shamblis testified that in the weeks and months leading up to Ellis's death, Floyd was still acting crazy. He was "stalking" her by driving through the parking lot of her place of employment

and the apartment complex. She had to keep her lights off to make it seem like she was not at home. She also changed the locks on her door at least three times. He also called Shamblis repeatedly and called others to ask where she was. Takelia also testified about Shamblis's relationship with Floyd. She described the relationship between Floyd and Shamblis as "awful." Over Floyd's objection, she explained that Floyd "used to beat on" Shamblis.

Floyd moved to strike the evidence of first-degree murder, asserting that it failed to prove the killing was willful, deliberate, and premeditated. He argued that the distance between the recovered cartridge cases and the broken glass negated an intent to kill. He argued that, at best, the evidence proved second-degree murder. The trial court denied the motion to strike. Following closing arguments, the jury convicted Floyd of first-degree murder and use of a firearm in the commission of murder.[3] Floyd noted this appeal.

## II. ANALYSIS

### A. *Admissibility of Shamblis's and Takelia's Testimony*

Floyd first argues that the trial court erred by allowing Shamblis and Takelia to testify about his abusive behavior toward Shamblis in the months before the shooting. He argues that the testimony was inadmissible evidence of prior bad acts, irrelevant, and unduly prejudicial. We disagree.

Floyd's first argument is that the testimony was inadmissible prior bad acts evidence. "Rule 5A:18, often referred to as the contemporaneous objection rule, provides in part that '[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . .'" *Merritt v. Commonwealth*, 69 Va. App. 452, 459 (2018) (alterations in original) (quoting Rule 5A:18). "The purpose of Rule 5A:18 is 'to

---

[3] The jury also convicted Floyd of shooting into an occupied vehicle; however, that conviction is not before us.

alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'" *Id.* (quoting *Fountain v. Commonwealth*, 64 Va. App. 51, 56 (2014)). Here, the trial court was denied such an opportunity because Floyd did not make this argument. Floyd objected to the testimony on the grounds of relevance, but he did not argue that the testimony was evidence of prior bad acts. Thus, this issue is not properly preserved, and we do not consider it on appeal.[4]

Floyd's next argument is that the testimony was not relevant to whether he committed the offenses because the alleged bad acts were directed at Shamblis rather than Ellis.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

"Evidence relating to a point properly at issue in a case is relevant and, therefore, admissible if it has 'any logical tendency, however slight,' to establish that point." *Church v. Commonwealth*, 71 Va. App. 107, 123 (2019) (quoting *Ragland v. Commonwealth*, 16 Va. App. 913, 918 (1993)). "Evidence is 'relevant' so long as it has 'any tendency to make the existence

---

[4] "Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, [Floyd] does not argue these exceptions and we will not invoke them *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

of any fact in issue more probable or less probable than it would be without the evidence.'" *Kilpatrick v. Commonwealth*, 73 Va. App. 172, 189 (2021) (quoting Va. R. Evid. 2:401). "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Church*, 71 Va. App. at 123 (alteration in original) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016)).

Here, Shamblis's testimony about Floyd's behavior toward her was relevant to his motive for killing Ellis. Shamblis's testimony established that she and Floyd had a prior romantic relationship that became awful after he started acting "crazy," and he began to stalk her when the relationship ended. Floyd repeatedly drove by Shamblis's apartment and even kicked her door down, causing her to change the locks three times and turn the lights off when she was home. He appeared at her place of employment if she did not return his calls. Conversely, Shamblis had a good relationship with Ellis, the father of her daughter, and the two were trying to reconcile. Thus, Floyd's past behavior toward Shamblis, which indicated a possessive and controlling obsession with her, was relevant to explain why he would get a gun from his car and shoot Ellis when he saw Ellis near her home.

We disagree with Floyd's contention that the prejudice from Shamblis's testimony outweighed any probative value. "The fact that some prejudice may result [from admitted evidence] does not justify automatic exclusion." *Mayfield v. Commonwealth*, 59 Va. App. 839, 849 (2012) (quoting *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196 (1987)). "Virginia law . . . intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences." *Id.* (alteration in original) (quoting *Thomas*, 44 Va. App. at 758). Here, the probative value outweighed any prejudice to Floyd. Therefore, the trial court did not err in admitting Shamblis's testimony.

We next consider whether the trial court erred in admitting Takelia's testimony that Floyd beat Shamblis. Assuming without deciding that the trial court erred by admitting it, we find any such error harmless.

"Non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Salahuddin v. Commonwealth*, 67 Va. App. 190, 211 (2017) (alteration in original) (quoting Code § 8.01-678). This Court can conclude that an error "is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" *Dandridge v. Commonwealth*, 72 Va. App. 669, 685 (2021) (quoting *Lienau v. Commonwealth*, 69 Va. App. 254, 270 (2018)).

Here, the evidence overwhelmingly established that Floyd shot Ellis. D.E. and Takelia witnessed Floyd say something "smart" to Ellis shortly before the shooting. D.E. saw Floyd walking down the stairs towards the parking lot, where Ellis was, shortly before she heard gunshots. Moody witnessed Floyd, whom he knew as "Pac Man," shooting into a car and then follow that car out of the parking lot. Moody was able to pick Floyd out of a lineup and later identify him in court. Given this evidence, in particular Moody's testimony, any error in admitting Takelia's testimony is "so insignificant" and "failed to have 'any substantial influence' on the verdict." *Dandridge*, 72 Va. App. at 685.

Accordingly, we find that the trial court did not err by admitting Shamblis's testimony because it was relevant and not unduly prejudicial. Additionally, assuming without deciding that the admission of Takelia's testimony was error, any such error was harmless.

B. *Sufficiency of Evidence of Premeditation*

Floyd also asserts that the evidence failed to prove the killing was intentional and premeditated and, instead, suggests that the evidence merely proved the offense of second-degree murder.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

In Virginia, a malicious killing is second-degree murder by default; it rises to first-degree murder only if the Commonwealth proves the homicide was willful, deliberate, and premeditated. Code § 18.2-32; *see Willis v. Commonwealth*, 37 Va. App. 224, 230 (2001). "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). Floyd challenges only the second element.

"Because 'premeditation and formation of an intent to kill seldom can be proved by direct evidence[,] [a] combination of circumstantial factors may be sufficient.'" *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004) (alterations in original) (quoting *Rhodes*, 238 Va. at

486).  "The intent to kill must come into existence at some time before the killing[, but] it need not exist for any particular length of time."  *Epperly v. Commonwealth*, 224 Va. 214, 231 (1982) (quoting *Smith v. Commonwealth*, 220 Va. 696, 700 (1980)).  "A design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill."  *Id.* (quoting *Giarratano v. Commonwealth*, 220 Va. 1064, 1074 (1980)).  "[E]vidence of a mortal wound inflicted by a deadly weapon with little or no provocation creates an inference from which the trier of fact may conclude that the killer acted with premeditation."  *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994).

Here, the record supports the jury's finding that Floyd formed a specific intent to kill Ellis before shooting him.  The evidence proved that Floyd and Shamblis had a previous relationship described as "awful" and "a mess."  In the months before the shooting, Floyd became increasingly possessive, aggressive, and abusive, often driving by her apartment and appearing at her place of employment, kicking down her door, attempting to run her over, and talking "trash."  On the night of the shooting, Takelia was surprised to see Floyd on the balcony outside Shamblis's apartment because he was not supposed to be there, and she heard Floyd say something "smart" to Ellis as they walked away.  In the meantime, Moody saw Floyd enter his car and retrieve something from it before walking back toward the staircase.  He then saw Floyd shooting into Ellis's car and watched Floyd follow Ellis out of the parking lot.  Forensic evidence proved that Floyd fired nine shots toward Ellis and hit him three times.  All nine shots were fired from the same weapon.  Ellis's wounds required surgery and ultimately resulted in his death.  And the record contains no evidence of provocation for Floyd's actions.  From this evidence we cannot conclude that the jury was plainly wrong in finding that this was a willful, deliberate, and premeditated killing.

III. Conclusion

For the foregoing reasons, we find that the trial court did not abuse its discretion in allowing Shamblis to testify about Floyd's conduct after their breakup because that information was relevant to his reason for killing Ellis. Any potential error in admitting Takelia's testimony about Floyd beating Shamblis was harmless. Furthermore, the evidence sufficiently supported the jury's finding that the killing was intentional and premeditated. The judgment of the trial court is affirmed.

*Affirmed.*